**Harrison VIGER**

v.

**GEOPHYSICAL SERVICES, INC., et al.,
HANOVER INSURANCE COMPANY,
Third-Party Defendant.**

**Civ. A. No. 13818.**

United States District Court,
W. D. Louisiana,
Opelousas Division.

Jan. 20, 1972.

I. Jackson Burson, Jr., Young & Burson, Eunice, La., for plaintiff.

Boris F. Navratil, Breazeale, Sachse & Wilson, Baton Rouge, La., W. Garney Griggs, Ross, Griggs & Harrison, Houston, Tex., for defendants.

NAUMAN S. SCOTT, Judge.

Harrison Viger, the plaintiff, brought this action under the Jones Act, 46 U.S. C. § 688, and the General Maritime Law against his employer, Geophysical Services, Inc. (GSI), its insurer, Continental Insurance Company (Continental), and the owner of the boat upon which he was injured, Muchowich Marine Service, Inc. (Muchowich). Muchowich filed a cross-complaint against GSI and Continental seeking indemnity from them for any sums it might be held liable for in this action or, alternatively, seeking to have GSI recognized as a joint tort-feasor. GSI then filed a third party complaint against Hanover Insurance Company (Hanover), the insurer of Muchowich, alleging that it was an additional insured under the policy issued to Muchowich and that Hanover denied coverage and refused to defend GSI in the action. At the same time, GSI filed a cross-claim against Muchowich seeking indemnity for any sums for which it might be held liable or, alternatively, seeking to have Muchowich recognized as a joint tort-feasor.

A compromise settlement was effected with Viger by Continental and GSI with the approval of Muchowich and Hanover in the sum of $30,000.00. Viger had previously been paid $10,064.72 by Continental and GSI as maintenance and cure. GSI-Continental and Muchowich-Hanover entered into the following stipulation of facts and submitted the matter to the Court for adjudication:

"1. On March 9, 1966, the vessel MISS FREEPORT was owned by Muchowich Marine Service, Inc., hereinafter referred to as Muchowich and was time chartered to Geophysical Services, Inc., hereinafter referred to as GSI, pursuant to the terms and conditions of a Charter Party dated February 3, 1965, attached herewith as Exhibit 'A'.

2. On March 9, 1966, there was in full force and effect a policy of Protection and Indemnity insurance issued by Hanover Insurance Company to Muchowich and covering the vessel MISS FREEPORT. GSI was named as an additional insured under this policy by virtue of an endorsement which is a part of the policy. The policy, including the endorsement, is attached hereto and marked as Exhibit 'B'.

3. On March 9, 1966, there was in full force and effect a policy of employ-

er's liability insurance issued by Continental Insurance Company to GSI, a copy of this policy is attached hereto and marked as Exhibit 'C'.

4. GSI utilized the MISS FREEPORT in marine seismic survey work in the Gulf of Mexico, and had aboard said vessel various employees who conducted the seismic operations.

5. On March 9, 1966, Harrison Viger was employed by GSI aboard the MISS FREEPORT and assisted in the seismic operations.

6. Muchowich had three employee crew members aboard the vessel, consisting of a captain, engineer, and deckhand, whose primary responsibilities were the navigation of the vessel. Any other responsibilities of the crew are specified in the Time Charter Agreement which is attached hereto as Exhibit 'A'.

7. At no time did the Muchowich Crew members assist, conduct, or otherwise engage in the seismic work being conducted by GSI employees, except insofar as the navigation of the vessel interrelated with the seismic operations.

8. The employees of GSI attended to the washing, scrubbing, painting, and routine housekeeping with respect to the after-deck of the MISS FREEPORT. Further in this connection the parties attach the depositions of Messrs. Ballard and Rowell marked as Exhibits 'D' and 'E'.

9. The operations and maintenance of all equipment, apparatus, and machinery utilized by GSI for the seismic operations was the sole responsibility of the GSI employees aboard the MISS FREEPORT.

10. Harrison Viger alleges that on March 9, 1966, he was injured as the result of a fall in the after-deck area of the MISS FREEPORT. He claims his fall was due to an oily substance present on the after-deck.

11. Viger has filed the instant suit to recover damages for injuries which he claims to have sustained as a result of the alleged fall, from Muchowich and GSI, all as more fully apparent from his complaint which is on record herein, and a copy of which is attached hereto as Exhibit 'F'."

The stipulation further provides, in part:

" . . . and the question of which insurance policy was properly applicable to Viger's claim (Hanover or Continental or both) would be submitted to the Court for adjudication on the basis of these stipulations."

Three separate demands are asserted by the plaintiff, one under the Jones Act, 46 U.S.C. § 688, another under the General Maritime Law for unseaworthiness of the vessel and a third for maintenance and cure. It is clear that GSI is ultimately responsible here. The reasons for this conclusion are set forth below, leaving only the question of the insurance for resolution.

 An employment relationship must exist between the seaman and the defendant at the time of the injury in order to justify recovery under the Jones Act. Cosmopolitan Shipping Company v. McCallister, 337 U.S. 783, 69 S. Ct. 1317, 93 L.Ed. 1692 (1949); Solet v. M/V Capt. H. V. Dufrene, 303 F.Supp. 980 (E.D.La.1969). In the "Joint Petition and Stipulation" submitted by all parties requesting adjudication of the matter it is stated: "On March 9, 1966, while working within the course and scope of his employment and while seismic operations were being conducted, Harrison Viger slipped and fell as a result of an oily substance on the after-deck". Counsel for GSI and Hanover admits in his memorandum that Viger fell because the deck of the "Miss Freeport" had become slippery due to the presence of some oily substance. He states: "Where the substance came from is not entirely clear, although it has been acknowledged by GSI that it may have come from equipment owned and used by it." No other logical conclusion may be drawn from the facts before the Court. In its seismographic operations, GSI utilized a cable which was

filled with a slippery substance known as Naroma Fluid. Both depositions included in the stipulation state that the cable frequently had holes in it and, when it was being reeled aboard, the fluid spilled out upon the deck. This process was being carried out at the time of the accident. They further indicate that GSI maintained a generator in the area in which Viger fell. Oil was present on the floor of the generator shack at just about all times. The deposition of Mr. Ballard indicates that this oil frequently was tracked out of the generator shack onto the deck. The depositions also show that the generator was not working properly and was in the process of being fixed at the time of the accident. It is stipulated that the responsibility for maintaining the generator, the seismographic equipment and the area of the deck in which Viger fell (indeed, the entire deck) belonged to GSI. GSI is liable under the Jones Act for injuries caused by its negligence.

■■ Likewise the oily substance on the deck was the only evidence of an unseaworthy condition on the vessel. While Muchowich is liable in damages for the injuries suffered by Viger as a result of the unseaworthiness of its vessel, Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Santomarco v. United States, 277 F.2d 255 (2d Cir.1960); Calderola v. Cunard Steamship Company, 279 F.2d 475 (2d Cir.1960); Rodriguez v. Coastal Ship Corp., 210 F.Supp. 38 (S.D.N.Y. 1962); Bertino v. Polish Ocean Line, 402 F.2d 863 (2d Cir.1968), it is entitled to indemnification from GSI. GSI's negligence was the primary cause of and brought about this unseaworthy condition; it was actively and primarily negligent and must, therefore, indemnify Muchowich, Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Company, 410 F.2d 178 (5th Cir.1969).

GSI also paid Viger maintenance and cure, Haskins v. Point Towing Co., 421 F.2d 532 (3rd Cir.1970):

"A primary prerequisite to any recovery under the statutory scheme of compensation provided by the Jones Act, 46 U.S.C. § 688 (1964), is the establishment by the seaman of an employer-employee relationship with the defendant. Rights given under the Act are an outgrowth of the peculiar condition of a seaman's employment. Paul v. United States, 205 F.2d 38 (3rd Cir.), cert. den. 346 U.S. 888, 74 S.Ct. 140, 98 L.Ed. 392 (1953). The same applies to rights arising under the older common law doctrine of maintenance and cure. See Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932); 1 Norris Law of Seamen, § 543 (2nd Ed., 1962)."

Thus GSI was ultimately liable for all damages recovered by Viger. The sole remaining question is, "Who is GSI's insurer?" GSI was an additional insured under the protection and indemnity policy issued by Hanover to Muchowich. This policy contains the following escape clause (Lines 103–105):

"Where the assured is, irrespective of this policy, covered or protected against any loss or claim which would otherwise have been paid by this Company, under this policy, there shall be no contribution or participation by this Company on the basis of excess, contributing, deficiency, concurrent, or double insurance or otherwise."

Continental issued GSI a liability policy containing the following clause:

"11. Other Insurance. If the insured has other insurance against a loss covered by this policy, the company shall not be liable to the insured hereunder for a greater proportion of such loss than the amount which would have been payable under this policy, had no such other insurance existed, bears to the sum of said amount and the amounts which would have been payable under each other policy applicable to such loss, had each

such policy been the only policy so applicable."

Continental advances the argument, inter alia, that the "escape clause" of the Hanover policy and the "pro-rata" clause of the Continental policy are mutually repugnant and that the companies should be required to prorate their respective coverages.

Hanover contends that Article IX of the charter party between Muchowich and GSI shows the intention of the parties with regard to insurance—that GSI is an additional insured in its policy only to the extent that GSI might be liable for any injury to any member of the crew hired by Muchowich. The Court agrees but finds it unnecessary to rely on this contention. Nor is the Court inclined to follow the authorities furnished by counsel, Fireman's Fund Insurance Co. v. Reliance Insurance Co., 291 F. Supp. 618 (D.C.Or.1968) and Hains v. Glaser Construction Co., 209 F.Supp. 355 (W.D.La.1962). The former case dealt with a matter of policy construction under the Law of the State of Oregon. The *Hains* case dealt with two "escape" clauses which were obviously mutually repugnant and would have left the insured without coverage under either policy.

Clauses in insurance policies must be given effect where possible. Thus, reading the Hanover and Continental clauses together, the only conclusion is that GSI has no "other insurance against a loss covered by this policy" within the meaning of the Continental policy. The escape clause of the Hanover policy prevents "other insurance" from ever coming into existence. The coverage of the Hanover policy does not extend to this matter and the "pro-rata" clause of the Continental policy never becomes effective since the requisite "other insurance" does not exist, Mc-Farland v. Chicago Express, Inc., 200 F.2d 5 (7th Cir.1952).

For the reasons set out above, we hold that GSI and Continental are not enti-tled to any reimbursement whatsoever from Hanover and a judgment in accordance with this opinion should therefore be submitted for signature by the Court.