601 So.2d 762 (1992)
Robert Ester PENTON and Laura McNeese Penton, Individually, and on Behalf of Robert Patrick Penton and Kippy Penton
v.
Dr. Vincent HOTHO and Bogalusa Community Medical Center.
No. 91 CA 0771.
Court of Appeal of Louisiana, First Circuit.
May 22, 1992.
*763 Steve M. Marks, Baton Rouge, for plaintiff-appellee.
Judy Perry Martinez, New Orleans, for defendant-appellant Lammico.
Chris Landry, Metairie, for defendant/appellee Dr. Hotho.
H. Martin Hunley, Jr., New Orleans, for defendant/appellee, Med Pro.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
This appeal comes to the court on cross-motions for summary judgment, seeking judicial declaration of liability between two insurance policies, one containing a "pro rata" "other insurance" clause and the other having an "excess" other insurance clause. The movers are Louisiana Medical Mutual Insurance Company, (LAMMICO) and The Medical Protective Company (Med Pro), the medical malpractice insurers of defendant Dr. Vincent Hotho. The trial court found the "other insurance" clauses within the competing policies to be mutually repugnant, and accordingly granted summary judgment in favor of Med Pro. We affirm.
LAMMICO insured Dr. Hotho under a "claims made"[1] policy from July 1, 1986, through July 1, 1987. In June, 1987, Dr. Hotho voluntarily changed his malpractice insurance to Med Pro. Med Pro also issued a "claims made" policy to Dr. Hotho which provided retroactive coverage for acts that occurred on or after July 1, 1986, but were not reported until after the policy's effective date of June 1, 1987. Both policies insured Dr. Hotho for claims made and acts or omissions of Dr. Hotho during their respective policy periods. When Dr. Hotho switched to Med Pro in June 1987, he purchased a "tail" or "reporting endorsement" from LAMMICO that afforded him an additional period of time (through December, 1987) within which he would be insured by LAMMICO for protection of claims arising out of alleged acts occurring during the original LAMMICO policy period, but for which claims were made after the termination of the policy.
As fate would have it, the plaintiff, Robert Ester Penton, was injured while Dr. Hotho was insured by LAMMICO, but he did not make his claim until July of 1987, which was within both LAMMICO's extended reporting period and the retroactive period of Med Pro.
Mr. Penton filed a request for a statutory medical review panel with the Commissioner of Insurance against Dr. Hotho and the Bogalusa County Medical Center on July 28, 1987. In December, 1987, Dr. Hotho forwarded to LAMMICO a copy of the request for the medical review panel and LAMMICO assumed Dr. Hotho's defense. In February, 1988, Dr. Hotho notified Med Pro of Mr. Penton's claim. Thereafter, LAMMICO discontinued its defense of Dr. Hotho, and counsel for Med Pro assumed Dr. Hotho's defense.
A medical review panel was convened pursuant to LSA-R.S. 40:1299.47(A)(1), which panel rendered an opinion against Dr. Hotho and the Bogalusa Community Medical Center. On February 21, 1989, Mr. Penton, his wife, and children filed this medical malpractice suit against Dr. Hotho and the Bogalusa Community Medical Center. They alleged that on August 19, 1986, Dr. Hotho performed surgery on Mr. Penton at the Bogalusa Community Medical Center and that Mr. Penton was damaged by the acts or omissions of the defendants committed during the hospitalization and surgery and suffered the loss of a kidney. By amended petition the plaintiffs joined LAMMICO and Med Pro as additional parties defendant.
Med Pro cross-claimed against LAMMICO, seeking a declaratory judgment decreeing that the Med Pro and LAMMICO policies *764 were co-extensive and provided identical coverage and a duty to defend Dr. Hotho, and thus LAMMICO was responsible for one-half of the costs of defense and one-half of any payment made by Dr. Hotho, or on his behalf, to the plaintiffs. In answer to the Med Pro cross claim, LAMMICO alleged that by the terms of its policy, it was merely an excess insurer and that Med Pro was Dr. Hotho's primary insurer. Thereafter, Med Pro and LAMMICO each filed a motion for summary judgment on Med Pro's cross claim.
The trial court granted Med Pro's motion for summary judgment. It decreed that there was concurrent coverage in equal proportions under the policies issued to Dr. Hotho by Med Pro and LAMMICO; that there was an equal duty to defend Dr. Hotho and to pay in equal proportions the reasonable costs of his defense; that indemnification to Dr. Hotho was due in equal proportions. LAMMICO appeals the judgment asserting that the trial court erred in concluding that the LAMMICO and Med Pro policies provided concurrent coverage.
There is no question that both the LAMMICO and the Med Pro policies of insurance were in effect and provided coverage at the time the Penton claim was made. However, a determination of the respective coverage provided by the policies depends on the interpretation of the "other insurance" clauses[2] that purport to allocate liability when other valid and collectible insurance is available.
In the instant case LAMMICO's policy contains an "excess" "other insurance" clause which reads:
The insurance available under this policy shall be excess over any other valid and collectible insurance.
Med Pro's policy contains a "pro rata" "other insurance" clause which reads:
4 Other insuranceThe insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.
When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.
LAMMICO argues that because of the "excess" clause contained in its other insurance provision, its policy is an excess policy "applicable to the loss on excess or contingent basis" as delineated in the first paragraph of Med Pro's other insurance provision and that accordingly Med Pro's liability should not be reduced. In contrast, Med Pro argues that both its policy and the LAMMICO policy provide primary coverage, thus making the first paragraph of its other insurance provision inapplicable. Med Pro argues, instead, that both insurance policies apply to the loss on the same basis and that the loss should be prorated according to the second paragraph of its other insurance provision.
We believe that the first paragraph of Med Pro's other insurance provision applies in this case only if LAMMICO is a true excess insurer.[3] When the provisions *765 of Med Pro's other insurance clauses are read together, it becomes clear that the excess coverage referred to in the first paragraph refers to a true excess policy and not merely a policy which becomes excess by virtue of the existence of another policy. The inclusion of an "excess clause" within the other insurance provision of an insurance policy does not transform a primary policy into a excess policy. Dean v. State Farm Mut. Auto. Ins. Co., 518 So.2d 1115 (La.App. 4th Cir.1987), writ denied, 522 So.2d 1096 (La.1988). LAMMICO admits that were it not for the existence of the other insurance provided by Med Pro, it would be the primary insurer of Dr. Hotho. Furthermore, the clear language of the LAMMICO policy, and the absence in the policy of any requirement for underlying insurance coverage, supports a finding that LAMMICO never intended its policy to be a true excess policy.
Before we move to the task of resolving the conflicting "other insurance" clauses within these concurrent policies, we find it helpful to review the various contexts in which conflicting "other insurance" clauses have occurred and the judicial response to those conflicts. Conflicting "other insurance" clauses are found in the context of either concurrent insurance policies (i.e. two or more primary policies or two or more excess policies) or non-concurrent policies (i.e. a primary policy and a true excess policy.) Within these two contexts, the conflicting "other insurance" clauses consist of every possible combination of "excess," "escape," and "pro-rata" clauses. A third situation that does not readily fit into the above generalization involves conflicting "excess" and "pro rata" clauses in automobile liability policies where the "excess" "other insurance" clause is tied to non-ownership coverage and the "pro rata" "other insurance" clause is related to ownership coverage.[4]

CONCURRENT POLICIES WITH CONFLICTING EXCESS AND ESCAPE CLAUSES
When confronted with a conflict between concurrent primary policies, each containing an excess clause or one containing an excess clause and the other containing an escape clause, the Louisiana courts have consistently held the two conflicting *766 clauses to be mutually repugnant and ineffective. Graves v. Traders & General Insurance Company, 252 La. 709, 214 So.2d 116, 118 (1968) (excess v. escape); Dean v. State Farm Mut. Auto Ins. Co., 518 So.2d at 1118 (excess v. excess); Sledge v. La. Dept. of Transp. & Development, 492 So.2d 139, 144 (La.App. 1st Cir.), writ denied, 494 So.2d 1176 (La.1986) (excess v. escape); Dette v. Covington Motors, Inc., 426 So.2d 718, 720 (La.App. 1st Cir.1983) (excess v. escape); Blanchard v. Rodrigue, 340 So.2d 1001 (La.App. 1st Cir.1976), writs denied, 341 So.2d 1129, 341 So.2d 1130 (La.1977) (excess v. excess). The reasoning applied in the Graves decision and its progeny is that the "other insurance" clauses cannot be reconciled, and if the provisions of both policies were given effect, neither insurer would be liable. The Graves court recognized that such a result would render all insurance nugatory and produce an absurdity which neither the insured nor the insurers contemplated. Graves v. Traders & General Insurance Company, 214 So.2d at 118.

NON-CONCURRENT POLICIES WITH CONFLICTING EXCESS CLAUSES
Where the two conflicting policies are non-concurrent (i.e. where one policy is primary and the other policy is a true excess policy), the "excess" "other insurance" clauses are not considered mutually repugnant, and the true excess policy does not provide coverage until the primary policy limits are exhausted. Truehart v. Blandon, 884 F.2d 223 (5th Cir.1989).

CONCURRENT LIABILITY POLICIES WITH CONFLICTING ESCAPE AND PRO RATA CLAUSES
Among the various conflicts of "other insurance" clauses the conflict of escape and pro rata clauses in concurrent policies is the closest comparable situation to that presented in the instant case. Although the Louisiana state courts have not addressed the conflict directly, two Louisiana federal district courts in similar factual situations have concluded that conflicting "escape" and "pro rata" "other insurance" clauses are not mutually repugnant. Layton v. Land and Marine Applicators, Inc., 522 F.Supp. 679 (E.D.La.1981) and Viger v. Geophysical Services, Inc., 338 F.Supp. 808 (W.D.La.1972).
In Viger the court gave effect to an escape clause, absolving one insurer of the burden of payment at the expense of the other. There a seaman brought a Jones Act claim against his employer and the owner of the vessel upon which he was working when injured. The court found the plaintiff's employer responsible for all plaintiff's injuries. The employer was an insured of both a policy of protection and indemnity which the owner of the vessel had procured. Both afforded liability coverage for the type of injury suffered by the plaintiff. However, the vessel policy contained an "escape clause" and the employer's policy contained a "pro rata" "other insurance" clause. The court excused the vessel policy from any duty of payment due to the escape clause upholding the sanctity of the contract and noting that "[c]lauses insurance policies must be given effect where possible." Id. at 812.
Viger was followed in Layton v. Land Marine Applicators, 522 F.Supp. at 682 (E.D.La.1981), a factually similar case. In Layton, the court notes that the Louisiana courts had, as yet, not addressed the precise issue of conflicting escape and pro rata clauses. However, the court recognized that the Louisiana cases involving a conflict between excess and pro rata clauses [within conflicting automobile liability policies] have systematically given effect to the excess clause, thereby leaving the insurer on the policy containing the pro rata clause primarily responsible for the claim. The court cited Juan v. Harris, 279 So.2d 187, and O'Brien v. Traders and General Insurance Company, 136 So.2d 852 (La. App. 1st Cir.1961). The Layton court explained that in such situations, unlike those involving two excess clauses, the insured will not be left without coverage if effect is given to the excess clause. By giving effect to the excess clause, that policy becomes excess insurance, and not other insurance, against a loss covered by this policy as used in the pro rata clause of the *767 second policy which would trigger application of that pro rata clause. The second policy, therefore, becomes the primary policy.

CONCURRENT POLICIES WITH CONFLICTING EXCESS AND PRO RATA CLAUSES
We now address the conflict presented in the instant case. An examination of the jurisprudence with regard to conflicting "excess" and "pro rata" clauses in a non-automobile liability situation reveals two opposite lines of authority.[5] Adopted by a majority of jurisdictions, the first line of authority holds that the terms of the "excess" clause prevail over the terms of the "pro rata" clause. The rationale for this view is that the policy containing the "excess" clause does not purport to cover the event until other insurance covering the event has been exhausted; therefore, the policy containing the "excess" clause does not provide collectible insurance with which the loss can be shared by the insurance policy containing the "pro rata" clause. Thus, the policy containing the "pro rata" clause is the primary insurance on the event, and its coverage must be exhausted before the excess policy is required to contribute anything. The majority view is aptly represented by the recent decision in St. Paul Mercury Insurance Co. v. Pennsylvania Casualty Company, 642 F.Supp. 180 (D.Wy.1986). Therein, the court was faced with a conflict between an "excess" "other insurance" clause and a "pro rata" "other insurance" clause in two general liability policies. The court determined that the respective clauses of each policy were entitled to receive the full force and effect intended for each. The court concluded that the excess clause should be given effect over the pro rata clause stating that:
It is not the purpose of this Court to assume a legislative status, unnecessarily giving unintended effect to otherwise clear contractual provisions. These insurers are not parties to the contract of the other.... Neither party relied upon the existence of insurance coverage on the part of the other.
Id. at 184.
The second line of authority, known as the Lamb-Weston rule,[6] is the minority view, and it holds that any conflict between other insurance clauses renders the clauses mutually repugnant and unenforceable, with the result that the loss must be shared by the insurers in proportion to the limits of each policy up to the policy limits of each policy.
The minority view was followed in Lamastus & Associates, Inc. v. Gulf Insurance Co., 260 So.2d 83 (La.App. 4th Cir.), writ denied, 261 La. 1054, 262 So.2d 40 (La.1972), which appears to be the only Louisiana case involving concurrent non-automobile policies with conflicting "excess" and "pro rata" clauses.[7] In Lamastus, the plaintiff purchased property insurance from Maryland Casualty Company (Maryland) for a building it owned. When the owner decided to cut and move the building, it purchased hazard insurance on the building from Gulf Insurance Co. because Maryland did not offer that type of insurance. The plaintiff maintained its insurance with Maryland and specifically extended the coverage in that policy to *768 cover the building after it was moved to its new location. The building was cut and moved in sections from the south shore of Lake Pontchartrain to the north shore. When three of the six sections had been moved to the north shore, Hurricane Camille struck and damaged the three sections situated on the north shore. The court concluded that each policy provided coverage for the loss. However, the court was required to resolve a conflict between an excess/escape clause within the Gulf policy and a pro rata clause in the Maryland policy. The court, unable to find a similar case, recognized the Lamb-Weston decision as presenting the nearest comparable conflict and quoted from the decision as follows:
The `other insurance' clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an `escape clause') or that used by St Paul (usually referred to as an `excess clause') or that used by Oregon (usually referred to as a `prorata clause'). In our opinion, whether one policy uses one clause or another, when any come in conflict with the `other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto.
Lamastus & Associates, Inc. v. Gulf Insurance Co., 260 So.2d at 86. The court adopted the reasoning of the Lamb-Weston decision and found that in a concurrent insurance context, an "excess" clause in one policy and a "pro rata" clause in another policy are conflicting, mutually repugnant, and ineffective.
LAMMICO contends that Lamastus is incorrect and should not be followed. It asks that we follow the "majority" view and find that the "excess" and "pro-rata" clauses are not mutually repugnant.
Our consideration of the many cases which have grappled with the vexatious problem presented by conflicting "other insurance" clauses leads us to the conclusion that the minority view produces a result more consistent with the intent of the parties. We agree that contracts should be respected as written and that all clauses should be given effect whenever possible. However, we also agree with the Lamb-Weston court that any attempt to give effect to the "other insurance" clause in one policy while simultaneously rejecting a similar provision in the other policy is the equivalent of pursuing a "will o' the wisp."[8]
Were we to give effect to both LAMMICO's and MED Pro's "other insurance" clauses, the insured in this case would be left with only the partial coverage provided for in the Med Pro policy. Such a result would leave a gap in coverage and produce an absurdity which neither the insured nor the insurers intended. Consequently, we find the "excess" and "pro rata" clauses to be mutually repugnant and ineffective.
The result of finding that the "excess" and "pro rata" clauses are mutually repugnant and ineffective is to pro rate the loss between the two insurers. Sledge v. La. *769 Dept. of Transp. & Development, 492 So.2d at 144 (La.App. 1st Cir.1986). Because each policy also provides for the defense of any claim within its policy provisions, each insurer is liable for its proportionate share of the costs in defending Dr. Hotho.
Accordingly, we affirm the decision of the trial court. All costs of this appeal are to be paid by appellant, LAMMICO.
AFFIRMED.
FOIL, J., dissents. I would follow the rule adopted by the majority of jurisdiction regarding conflicting excess.
NOTES
[1] A "claims made" policy generally protects against claims which are made against the insurer, while the policy is in force, and arising from the performance of professional services during the policy's designated time period.
[2] There are three basic types of "other insurance" clauses: (1) "pro rata," (2) "excess," and (3) "escape". A "pro rata" clause provides for a sharing of responsibility among the insurers. It may provide for contribution in proportion to the limits of liability of each policy, or it may provide for contribution in equal shares up to the limits of each policy. An "excess" clause normally provides that the policy or coverage shall apply only as excess insurance over any other valid and collectible insurance. An "escape" clause typically provides that the insurer shall have no liability if there is other insurance available.
[3] In resolving conflicting "other insurance" clauses it is important to distinguish between policies that are true excess policies and those that are actually primary policies with "excess" other insurance clauses. A true excess policy is one that provides that the insurer is liable only for the excess above and beyond that which may be collected from the primary insurer. It is customary in such policies to include a requirement for underlying primary insurance for a certain amount and to list such other primary insurance within the excess policy. On the other hand an "excess" other insurance clause within a primary policy is considered a self-serving provision that attempts to make the insurer only secondarily liable if another unexhausted policy is available to cover claims. See 12A Couch on Insurance § 45:628 (M.Rhodes 2d ed. 1981).
[4] In the context of automobile liability insurance cases the competing liability policies usually each contain an excess clause and a pro rata clause within their respective "other insurance" clauses. The excess clause in each policy is normally tied to "non-ownership" coverage and provides that with respect to a substitute automobile or non-owned automobile, the insurance shall be excess insurance over any other valid and collectible insurance. The "pro rata" clause is related to ownership coverage and provides coverage with other valid and collectible insurance on a pro rata basis. In the typical scenario, the owner of an automobile has a policy with an omnibus clause, and the additional insured has a non-ownership provision in his policy. In such cases, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exhausted. In other words a non-ownership clause, with an excess coverage provision, does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause. Juan v. Harris, 279 So.2d 187 (La.1973); Blanchard v. Rodrigue, 340 So.2d 1001; Thomas v. Neeb-Kearney and Company, Inc., 334 So.2d 465 (La.App. 4th Cir.1976). It appears from the rationale of these cases that the courts have determined that the insurance provided for non-owned vehicles is ancillary to the primary coverage of the owned vehicle for which the policy was primarily purchased. Hence, the courts have determined that coverage in these cases is non-concurrent, with the insurer of the vehicle being the primary insurer and the insurer of the non-owned vehicle in the nature of a true excess insurer.

We believe that the approach used in these cases is inapplicable to the present factual situation because the "excess" "other insurance" clauses in those cases are tied to a condition of non-ownership and are not triggered solely by the existence of other valid and collectible insurance. We believe that the non-ownership condition qualifies the applicability of the theory of those cases to the general liability insurance situation presented in the instant case.
[5] Other views have been followed by some courts. One is that the insurer of the policy first in effect is liable. Another is to assign primary liability to the policy which is determined to be more specific. Lastly, some courts have held that the policy insuring the primary tortfeasor is the primary policy. See discussion in Oregon Auto. Ins. Co. v. U.S.F.G., 195 F.2d 958 (9th Cir.1952), rejecting all these views.
[6] The Lamb-Weston rule originated from Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110, mod. on reh., 219 Or. 110, 346 P.2d 643 (1959). For a thorough discussion of the Lamb-Weston case see this court's opinion in Graves v. Traders & General Insurance Company, 200 So.2d 67 (La.App. 1st Cir.1967), aff'd, 252 La. 709, 214 So.2d 116 (1968).
[7] We note that the Lamb-Weston decision was quoted favorably by this court in Graves v. Traders & General Insurance Company, 200 So.2d 67 (La.App. 1st Cir.1967), even though the conflict in Graves was between two conflicting excess other insurance clauses and the Lamb-Weston case involved conflicting "excess" and "pro rata" clauses.
[8] The Lamb-Weston rule is criticized for purportedly overriding the contractual intent of the parties and placing the courts in the role of the legislature. See Jones v. Medox, 430 A.2d 488 (D.C.1981). However, others view the Lamb-Weston rule as a more balanced and equitable rule because:

It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers. It does not delay settlements. On the other hand, it does enable underwriters to predict the losses of the insurers more accurately; it does preclude the use of illogical rules developed by the courts (e.g., first in time, specific v. general and primary tort-feasor doctrines); and it does give a basis for uniformity of result. In addition, prorating the loss among all insurers is a rule that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the "other insurance" clauses. Finally, the rule is simpler, more convenient, and easier to apply than the majority rule. [Note, Conflicts Between "Other Insurance" Clauses in Automobile Liability Policies, 20 Hastings L.J. 1292, 1304 (1969), cited in Werley v. United Services Automobile Association, 498 P.2d 112, 117 (Alaska 1972).]
Jones v. Medox, 430 A.2d at 496. (dissenting opinion).