639 So.2d 1218 (1994)
Louana Himel FROIS
v.
Larry BULLOCK, Amica Mutual Insurance Company, and State Farm Fire and Casualty Company.
No. 94-CA-0061.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
*1219 W. Marvin Hall, Julie DiFulco Robles, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for intervenor/appellee State Farm Fire & Cas. Ins. Co.
Christina H. Belew, Simon, Peragine, Smith & Redfearn, New Orleans, for defendant/appellant Amica Mut. Ins. Co.
Before BARRY, KLEES and PLOTKIN, JJ.
KLEES, Judge.
Amica Mutual Insurance Company, seeking indemnity or contribution from State Farm Fire and Casualty Company, appeals the trial court's decision which denied Amica's summary judgment motion and granted State Farm's summary judgment motion. We affirm.
The parties agree on the underlying facts of this case. On January 4, 1989, Mrs. Louana Frois had just parked her privately owned car in a commercial parking lot and was walking across Loyola Avenue toward her law office when she was struck by a vehicle. According to Amica, the uninsured driver of the vehicle, Mr. Larry Bullock, was extremely drunk and had run a red light. Mrs. Frois sustained serious injuries as a result of the incident.
In addition to suing Mr. Bullock, Mrs. Frois sued Amica, which was her personal uninsured motorist (UM) insurer, and State Farm, which held a Business Liability Policy with the law firm employing Mrs. Frois. The State Farm policy contained elements of automobile coverage and Mrs. Frois's firm, Sutherland & Juge, did not waive UM coverage under the policy.
The suit against Amica was eventually settled for $500,000. As part of the settlement, Mrs. Frois executed a Receipt and Release, with subrogation, in Amica's favor. As subrogee, Amica filed a cross-claim against State Farm seeking contribution or indemnity for the damages paid to Mrs. Frois.
On summary judgment, the trial court found that, under La.R.S. 22:1406(D), the State Farm policy provided UM coverage to Mrs. Frois. La.R.S. 22:1406(D)(1)(a)(i) provides the following, in pertinent part:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless [uninsured motorist] coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, ..., for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury ...
Under La.R.S. 22:1406(D)(1)(a)(i), therefore, a policy containing automobile liability coverage also furnishes UM coverage in an amount equal to the policy's liability limits, $1,000,000 in State Farm's case.
Although the trial court found that the above statute provided Mrs. Frois with UM coverage under the State Farm policy, the trial court also found that Amica's UM coverage primed State Farm's UM coverage because of an "other insurance" clause contained in State Farm's policy. The "other insurance" clause at issue reads as follows:
10. Other Insurance. This insurance shall apply only as excess insurance over any other valid and collectible insurance which would apply in the absence of this policy, except insurance written specifically to cover as excess over the limits of liability applicable to Section II of this policy.
On appeal, State Farm contends that the above clause does not have to be considered in order for them to be exonerated from liability. Contrary to the trial court's decision, State Farm argues that Mrs. Frois did *1220 not have statutorily mandated UM coverage under their policy. Amica, on the other hand, complains that State Farm's "other insurance" clause is invalid and that State Farm should be held liable to Amica for a pro-rata share of Mrs. Frois's damages. Amica bases its claim for pro-rata contribution on its own "other insurance" clause, which provides the following, in pertinent part: "If other insurance also covers the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits." (See Amica Policy, Exhibit "E" to State Farm's Motion for Summary Judgment, P. 6, Record Vol. II) The arguments of both parties are considered below.

DOES MRS. FROIS HAVE UM PROTECTION UNDER THE STATE FARM POLICY?
State Farm argues that in order for Mrs. Frois to be afforded statutorily imposed UM coverage, Mrs. Frois must first be found to have liability coverage under their policy. State Farm avers that Mrs. Frois did not have liability coverage under their policy because she was a pedestrian at the time of the incident and, as such, was not using or occupying her vehicle as is required in their policy. We agree with the trial court, however, that the State Farm policy does afford Mrs. Frois UM coverage under La.R.S. 22:1406(D)(1)(a)(i).
State Farm has relied in part, both in its brief and at oral argument, on Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.), writ den. 577 So.2d 1009 (La.1991) for the proposition that, as a pedestrian, Mrs. Frois does not meet the definition of an "insured" under their policy. In Barnes, the plaintiff did not fit within the policy's definition of an "insured" because he was not a named insured, a relation of the named insured, or a person occupying a covered automobile. Id. at 1163. Barnes does not influence the present case, however, because, unlike the Barnes policy, the State Farm policy expressly includes employees among those defined as insured. Moreover, State Farm readily admits in its brief that Mrs. Frois, as an employee of the law firm, is defined as an "insured" under their policy. (See State Farm Brief, p. 10)
In Howell v. Balboa Ins. Co., 564 So.2d 298, 301 (La.1990), the Louisiana Supreme Court stated the following regarding persons classified as "insured":
We expressly hold that UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). In other words, any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply be reason of having sustained injury by an uninsured/underinsured motorist.
Furthermore, as stated by the court in Elledge v. Warren, 263 So.2d 912, 918 (La.App. 3rd Cir.), writ refused, 262 La. 1096, 266 So.2d 223 (1972), an insured is covered by the UM statute whether he's walking, driving, or rocking on the front porch. As an insured, therefore, Mrs. Frois enjoys statutorily imposed UM protection regardless of whether she was in her car at the time of the incident.

IS STATE FARM'S "OTHER INSURANCE" CLAUSE VIABLE IN THIS CASE?
Having agreed with the trial court that State Farm's policy provides Mrs. Frois with UM coverage, we also agree with the trial court that Amica's UM coverage primes that of State Farm. We reject Amica's argument that their pro-rata "other insurance" clause should be applied and that State Farm's "other insurance" clause should be held invalid.
The instant case does not support Amica's claim that the State Farm clause "impermissibly narrows the uninsured motorist coverage mandated by law." Mrs. Frois, who recovered $500,000 in full payment of her claim, suffered no lapse in coverage. The State Farm clause merely established which insurance company was primarily responsible for the UM claim.
*1221 If both policies contained "excess" provisions such as State Farm's, then perhaps the clauses would impede recovery and be unenforceable. The instant case, however, involves a conflict between an excess clause in the State Farm policy and a pro rata clause in the Amica policy. Where such a conflict exists between two competing automobile liability policies, the Louisiana courts have generally given effect to the excess clause, thereby leaving the insurer on the policy with the pro rata clause primarily responsible for the claim. Layton v. Land & Marine Applicators, Inc., 522 F.Supp. 679, 682-83 (E.D.La.1981) (citing Juan v. Harris, 279 So.2d 187, 189-190 (La.1973), and O'Brien v. Traders & General Ins. Co., 136 So.2d 852, 865 (La.App. 1st Cir.1961)).
Amica has also been unable to cite any case which mandates that we accept the argument that the State Farm clause violates public policy. The cases cited by Amica are distinguishable from the present case and are not dispositive of the issues faced by this court. For example, unlike Mrs. Frois's case, Capone v. King, 467 So.2d 574 (La.App. 5th Cir.), writ denied, 468 So.2d 1203 (La. 1985) and Boudreaux v. Optimum Ins. Co., 854 F.2d 88 (5th Cir.1988) involved stacking issues and vehicles not owned by the plaintiffs. Accordingly, we conclude that the trial court correctly granted State Farm's motion for summary judgment.
For the foregoing reasons, the trial court judgment of September 20, 1993, is affirmed.
AFFIRMED.
BARRY, J., concurs with reasons.
PLOTKIN, J., dissents in part, concurs in part.
BARRY, Judge, concurring with reasons.
The cases of Howell v. Balboa Insurance Company, 564 So.2d 298 (La.1990), and Elledge v. Warren, 263 So.2d 912 (La.App. 3rd Cir.1972, writ refused, 262 La. 1096, 266 So.2d 223 (1972), are not on point. Also, their validity has been questioned. See Sandoz v. State Farm Mutual Auto Ins., 620 So.2d 441 (La.App. 3rd Cir.1993). See also Fontenot v. Farm Bureau Insurance, 629 So.2d 495 (La.App. 3rd Cir.1993), writ denied, 634 So.2d 851 (La.1994); Galliano v. State Farm, 606 So.2d 580 (La.App. 5th Cir. 1992).
Under State Farm's policy an insured is "any employee of the named insured while acting within the scope of their duties as such." Mrs. Frois was an insured under the policy and under these circumstances was entitled to UM coverage.
PLOTKIN, Judge, dissenting in part, concurring in part.
I respectfully dissent from the majority's decision on one issue"that Amica's UM coverage primes that of State Farm." The substantive issue is the interpretation of conflicting provisions in two insurance policies, namely a pro rata clause versus an excess clause.
In this case, Amica has a pro rata "other insurance" clause which provides as follows: "if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total applicable limits." (Emphasis added.) A rationale for the pro rata provision is that where there is concurrent insurance, as exists in this case, each insurer is liable for its pro rata amount. Long, The Law of Liability Insurance, Vol. 3, § 22.65.
Ms. Frois is the beneficiary of both UM insurance policies. State Farm has an excess clause which states that its insurance is "excess insurance over any other valid and collectible insurance which would apply in the absence of this policy." Generally, excess provisions are intended to establish a priority of payment, in that the excess insurer is not obligated to make payment until the primary insurance coverage is paid. When two or more policies issued on the same risk contain excess clauses, the courts generally require pro ration. Long, supra at § 22.06.
The pro rata-excess conflict was resolved by this court in Lamastus & Associates, Inc. v. Gulf Insurance Co., 260 So.2d 83, 86 (La. App. 4th Cir.1972), writ denied 261 La. 1054, 262 So.2d 40 (La. 1972). In that case, this court held that the excess and pro rata clauses *1222 were mutually repugnant to each other, and that the loss therefore had to be pro rated or apportioned. Each insurer was required to bear the same proportion of the UM loss its coverage bears to the total amount of enforceable and collectible insurance.
The most recent expression on this subject is Penton v. Hotho, 601 So.2d 762 (La. App. 1st Cir.1992). In that case, the court researched and analyzed the jurisprudence and held, in a persuasively-reasoned opinion relying upon Lamastus and Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 219 Or. 110, 341 P.2d 110, modified on reh'g 219 Or. 110, 346 P.2d 643 (Or.1959), that conflicting "excess" and "pro rata" clauses are mutually repugnant. The Penton court adopted what is known as the Lamb-Weston rule, which holds that any conflict between other insurance clauses that render the clauses mutually repugnant and unenforceable, requires that the loss be shared by the insurers in proportion to the limits of each policy up to the policy limits. See Long, supra at § 22.08 for a collection of cases that follow the Lamb-Weston rule.
The majority relies upon Layton v. Land & Marine Applicators, Inc., 522 F.Supp. 679 (E.D.La.1981) (citing Juan v. Harris, 279 So.2d 187 (La.1973) and O'Brien v. Traders & General Insurance Co., 136 So.2d 852 (La. App. 1st Cir.1961)), in holding that the Amica pro rata clause primed the State Farm excess policy. These cases are distinguishable. In Juan, the insurance question concerned whether the insurance company covered a non-owned vehicle, as well as a determination of which insurer was the primary or excess insurer. The Supreme Court found no conflict in the insurance clauses before the court and held that one insurer had the primary insurance on the owned vehicle and the other was excess coverage because the truck was a non-owned vehicle. The O'Brien court, without any definition, analysis or discussion of the policy provisions, rendered a judgment decreeing one insurer as primary and the other as excess on a non-owned automobile.
In Layton, a Jones Act case, the Court incorrectly cited Juan and O'Brien in support of its decision concerning conflicting insurance policiesone a protection and indemnity policy issued to the employer, which contained an escape clause, and the other an employer's liability policy, which contained a pro rata clause. First, I would note that the escape clause in Layton is not an excess clause.[1] An escape clause is designed to provide coverage only if no other insurance coverage is available to the insured, making coverage contingent on the absence of any other insurance. McKenzie and Johnson, Treatise on Insurance, § 228. The Court then compared the conflict between escape and pro rata clauses and excess and pro rata clauses. Again, without any analysis, the court concluded, based on Juan and O'Brien, that the pro rata insurer was primary and the excess insurer was secondary. The Layton analogy, rationale, and analysis is erroneous.
In my view, both Amica and State Farm provide concurrent UM insurance coverage. Both have contractual obligations and share the same risk to their insured. It logically and equitably follows that the insurers should share the economic risk of loss on a pro rata basis. It is unfair and unjust, in this type of situation, involving two UM carriers, to uphold a policy provision in one insurance policy and abrogate the other where the insurance clauses create a conflict. There is no economic or rational policy reason to select one insurance provision over another as the majority has done.
Therefore, since both UM policies covered Mrs. Frois for the same risk of loss, notwithstanding the other insurance clauses in their policies, both should contribute on a pro rata basis. For these reasons, I dissent in part and concur in part.
NOTES
[1] The clause provided as follows: "Where the assured is, irrespective of the policy, covered or protected against any loss or claim which would otherwise have been paid by this Company, under this policy, there shall be no contribution or participation by this Company on the basis of excess, contributing, deficiency concurrent, or double insurance or otherwise." Policy No. BH 12044, lines 103-105.