**ELF EXPLORATION, INC.**

v.

**CAMERON OFFSHORE BOATS, INC.**

No. 1:93–CV–371.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 9, 1994.

James Mayer Harris, Jr., Holmes & Harris, Beaumont, TX, for plaintiff.

J. Michael Vernon & Steven B. McAlister, Scofield Gerard Veron Singletary & Pohorelsky, Lake Charles, LA, for defendant.

## MEMORANDUM

HINES, United States Magistrate Judge.

Pending are the parties' competing motions for summary judgment. On December 1, 1993, pursuant to consent of each party, this case was referred to the undersigned United States magistrate judge for further proceedings and entry of judgment.

### I. Background

This cause of action arises from a previous lawsuit by Sherman Mouton, Sr., No. 1:91–CV–746, in the Eastern District of Texas. In that action, Mouton brought suit for personal injuries allegedly arising from an accident on June 15, 1990.

Due to a major oil spill off the coast of Galveston, Texas, (the "Megaborg" oil spill), plaintiff herein contacted M.T. Nash, defendant's manager on June 13, 1990 in an effort to charter boats. During that conversation, the parties agreed that defendant would supply boats, equip them, maintain them in sea-

worthy condition, and man them at a certain rate per day. That day, defendant dispatched vessels to Galveston as requested. Defendant received a written Boat Charter Agreement through the mail on approximately June 18, 1990.

Among the boats provided was the M/V Monique McCall and its two man crew consisting of a captain, Rodney Miller, and a deckhand, Sherman Mouton. Mouton claimed that he sustained injuries as a result of riding in rough seas on June 15, 1990, while the boat was en route to the spill site.

In the underlying litigation, Mouton brought suit against Cameron Offshore Boats, Inc., Elf Exploration, Inc., Elf Aquitaine, Inc., and Elf Trading, Inc. Elf Exploration (hereinafter "Elf") filed a cross-claim for breach of contract arising out of the Boat Charter Agreement. Elf Exploration then filed a motion to sever and realign parties which was granted by the Honorable Richard A. Schell, resulting in this separate cause of action.

Before trial of the personal injury cause of action, Mouton entered into a compromise with each of the Elf entities. The claim against Cameron Offshore Boats, Inc. proceeded to non-jury trial which occurred from May 3, 1993 to May 7, 1993. Upon conclusion, Judge Schell dismissed Mouton's Jones Act and unseaworthiness claims based upon Cameron Offshore's motion for judgment on partial findings under FED.R.CIV.P. 52(c).

Remaining for decision is Elf Exploration, Inc.'s breach of contract suit contending that defendant, Cameron Offshore Boats, Inc. ("Cameron"), failed to name Elf as an additional assured under a policy of insurance as required by the Boat Charter Agreement.

## II. Motions for Summary Judgment

### A. Plaintiff's Motion and Defendant's Response

Plaintiff contends that the Boat Charter Agreement entered into between Elf and Cameron required Cameron to name Elf as an additional insured under the various insurance policies purchased by Cameron at its own expense. Cameron failed to name Elf as an additional insured under any policy of insurance. As a result, Elf incurred expenses in defending and settling Mouton's claims.

Plaintiff further contends that the Boat Charter Agreement was entered into on June 13, 1990, pursuant to the language of the agreement, despite the fact that it was not actually signed until approximately June 18, 1990. Mickey Nash, Cameron's manager "backdated" the written agreement to the date of the original oral agreement. Therefore, the parties intended the contract to take effect on June 13, 1990.

Thus, plaintiff contends that Cameron's failure to procure insurance for Elf and name Elf as an additional insured, constituted a breach of the Boat Charter Agreement.

Defendant responds that no request was made on June 13, 1990 for Cameron to name Elf as an additional assured under any insurance policy. Furthermore, no such request was made in a subsequent conversation on June 14, 1990. Therefore, Cameron received no request for Elf Exploration to be named as an additional assured under an insurance policy prior to receipt of the Boat Charter Agreement on or about June 18, 1990. Even then, the agreement had not been signed by a representative of Elf. The document was returned to Elf, and Jean Pierre Guegan ultimately signed the agreement on behalf of Elf. Thus, the Boat Charter Agreement was not effective until long after June 15, 1990.

Additionally, Cameron contends that Elf's claim must be rejected because it failed to establish that it had any liability to Mouton. Cameron notes that where a party seeking indemnity settles with an injured party rather than proceeding to judgment, the party seeking indemnity must prove liability to the injured party in order to recover his indemnity claim.

Finally, Cameron contends that if the Boat Charter Agreement validly required Elf to be named an additional assured, then Elf actually became an additional assured. Cameron's P & I insurance policy recognizes additional assureds "if required in the ordinary course of their business." Thus, Elf would be recognized as an additional assured by virtue of the mere execution of the agree-

ment to give them additional assured status, and Elf should be required to submit its claim to the P & I insurer.

## B. Defendant's Motion and Plaintiff's Response

Cameron brings forth two additional arguments in its own motion for summary judgment. First, the charter agreement, by its own terms, does not require Cameron to name Elf as an "additional assured." Instead the document refers to the naming of "Charterer" (Elf) and other parties as "additional assurers."

Second, Cameron's P & I policy includes an "other insurance" escape clause. Such an escape clause renders the policy in which it is contained completely inapplicable if other insurance exists in favor of the assured. Because Elf was covered by other insurance, it could not have collected under Cameron's P & I policy, and no damages were sustained.

Plaintiff responds that the contract term, "additional assurer," was a typographical error. It is clear from reading the agreement as a whole that the term "assurer" was inadvertently inserted instead of the term "assured." As the court is to ascertain the parties' intentions by examining the entire writing, Cameron's argument is without merit.

Plaintiff further contends that Cameron may not avail itself of the P & I policy's escape clause. First, Cameron may not step into the shoes of the insurance carrier in order to claim this defense. Second, no facts prove that Elf would have been named under this insurance policy or that Elf would have consented to this policy. The Boat Charter Agreement requires insurance with insurers "satisfactory to Elf." Furthermore, plaintiff contends that the settlement and expenses were not ultimately paid for by the insurance carrier.

Finally, plaintiff contends that Paragraph 16 of the policy provides that the "other insurance" clauses contained in the policy shall be deemed deleted as respects the named assured or subsidiaries or related companies and as may be required by contract. The insurance shall be deemed primary as required by contract. As Cameron was required to provide insurance covering Elf by contract, the escape clause is inapplicable.

Defendant's reply to plaintiff's response argues that since the term "assurer" was used in the agreement on at least three occasions, it was no "typographical error." As both parties agree that the contract should be construed from its four corners, the contract does not require naming Elf as an additional "assured."

Furthermore, defendant contends that it is not attempting to "step into the shoes" of the P & I insured, but instead it is attempting merely to demonstrate that no damages have occurred as a result of the alleged breach of contract. Elf would have been named under the policy in question as the very meaning of "additional assured" is that one company is required to add another as an *additional* assured under its existing P & I policy. Cameron was in no way required to submit the policy to Elf for approval.

Defendant adds that it is irrelevant whether the insurance carrier actually paid Elf's settlement and expenses. The other insurance clause applies if the "additional assured" *has* other insurance.

Finally, defendant argues that the Boat Charter Agreement does not require deletion of the other insurance clause or that the P & I policy be deemed primary. In contrast, the agreement *does* make specific provision that the "as owner" provisions of the P & I policy must be deleted. As no specific provision was made for the deletion of the "other insurance" clause, its deletion was not required.

## C. Summary

The parties' motions raise the following questions: (1) Did the contract require plaintiff to be named as an additional assured? (2) If so, was defendant required to obtain such insurance prior to the date of Mouton's alleged injury? (3) Did plaintiff sustain damages in light of the insurance contract's escape clause? and (4) Did defendant fail to obtain insurance in light of the insurance contract's omnibus clause? All must be an-

swered in the affirmative in order for plaintiff to prevail.

### III. Discussion

#### A. Choice of Law

■ The applicable law in a suit regarding a contract to procure insurance was discussed in *Angelina Casualty Co. v. Exxon Corp., U.S.A., Inc.,* 876 F.2d 40 (5th Cir. 1989):

> A ship charter is unquestionably a maritime contract. *See Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538–39 (5th Cir.1986). A contract to procure insurance, however, is not a maritime contract. *See Koch–Ellis Marine Contractors, Inc. v. Phillips Petroleum Co.,* 219 F.2d 520, 521 n. 2 (5th Cir.1955); *Syndicate 420 at Lloyd's London Glacier General Assurance Co.,* 633 F.Supp. 428, 430 (E.D.La. 1986) ... Under the rule in *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 955 (5th Cir.1988) state law governs disputes arising out of the performance of a separate non-maritime obligation of a mixed contract.

and

> [A] policy of marine insurance is a maritime contract; but an agreement to make or procure a policy is generally thought not to be. Consequently, if the agreement should be violated and the policy should not be issued, or, being issued, should differ in important particulars from that agreed upon, admiralty would not have jurisdiction of a suit for breach of the contract, or to reform the policy or to take cognizance of a mutual mistake. But if the policy had actually been issued, admiralty jurisdiction would attach for any suit on the policy issued. 1 S. Friedell, *Benedict on Admiralty,* § 183, at 12–7 (7th rev. ed. 1988) (footnotes omitted).

■ In this case, the suit involves solely an agreement to procure a policy. Thus, state law governs. Plaintiffs contend that application of Texas law is equally plausible as the application of Louisiana law.[1]

Based upon the issues presented, however, the choice between Texas or Louisiana law is not material. Defendant does not agree with plaintiff's choice of law analysis, but agrees that it does not have "any real bearing on resolution of the real issues." Based upon defendant's lack of objection, Texas law will be applied.

#### B. Texas Contract Law

■ The elements of breach of contract are: (1) the existence of the contract sued upon; (2) the plaintiff's compliance with the terms of the contract; (3) the defendant's breach of the contract; and (4) damages because of the breach. *Stegman v. Chavers,* 704 S.W.2d 793, 795 (Tex.App.—Dallas 1985, *no writ*); *Landrum v. Devenport,* 616 S.W.2d 359, 361 (Tex.Civ.App.—Texarkana 1981, *no writ*).

---

1. A federal court in a diversity action must apply the conflict of laws rules of the forum in which it sits. *Caton v. Leach Corp.,* 896 F.2d 939 (5th Cir.1990) following *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975). Texas courts, when deciding which state's law should govern contractual rights, look to principles stated in Restatement (Second) of Conflict of Laws (1971). *See Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50 (Tex.1991); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 679 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991).

Section 6 of the Restatement (Second) of Conflict of Laws states:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

In Texas, courts enforce unambiguous instruments as written, and in the ordinary case, the writing alone will be deemed to express the intention of the parties. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981); *Rutherford v. Randal*, 593 S.W.2d 949 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968); *Smith v. Liddell*, 367 S.W.2d 662 (Tex.1963); *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617 (1955).

In determining whether a Texas contract is ambiguous, the Fifth Circuit stated in *REO Indus. v. Natural Gas Pipeline Co.*, 932 F.2d 447, 453 (5th Cir.1991):

A contract is not ambiguous merely because the parties have a disagreement on the correct interpretation. A contract is not ambiguous when it is reasonably open to just one interpretation given the rules of construction and the surrounding circumstances. Contracts are to be construed in their entirety to give effect to the intent of the parties, considering each provision with reference to the entire contract, so that every clause has some effect and no clause is rendered meaningless. A contract is given its plain grammatical meaning unless that meaning would defeat the intent of the parties. And, of course, the interpretation of the writing should be undertaken in the light of the circumstances at the time the contract was executed.

[quotations and citations omitted].

## C. Application

Assuming, without deciding, that defendant was required to name Elf as an additional assured, and that such agreement was consummated prior to Mouton's injury, plaintiff still must prove breach of that agreement and damages.[2]

### 1. Omnibus Clause

In order for plaintiff to prove a breach of the contract, he must show that defendant did not fulfill its obligations under the contract. Although defendant did not take affir-

mative steps toward procuring insurance, it contends that the omnibus clause of its insurance contract provides that plaintiff is, in fact, an additional assured.

Paragraph Six of the "General Conditions—Protection and Indemnity" states:

If required in the ordinary course of their business, permission is hereby granted the assured to name Additional Assureds and waive underwriters' rights of subrogation provided such naming or waiver takes place prior to any accident or occurrence giving rise to a claim hereunder.

In *Clark v. B & D Inspection Serv.*, 896 F.2d 105, 106 (5th Cir.1990), the Fifth Circuit examined a similar clause [3] and found:

The district court correctly concluded that Bruce Marine was required to be named as an additional insured by virtue of its agreement with Val–Tex to name one another on their respective insurance policies. The record does not indicate, as Scottsdale argues, that the agreement was an "informal arrangement." It is indisputed that the general manager and owner of Bruce Marine testified one of the bases for his company's agreement with Val–Tex was an agreement to be named as an additional insured. **The language of the policy requires no more.**

[emphasis added].

Similarly, in *Rebstock v. Sonat Offshore Drilling, Inc.*, No. 90–3902, 1991 WL 255401 (E.D.La. Nov. 19, 1991), the court concluded:

L & M was required to include Amoco and Sonat in its P & I policy; the policy's co-assured clause provides that where required, as here, L & M may include other parties as additional assureds.

Plaintiff distinguishes *Clark* and *Rebstock* by reading those opinions narrowly. In *Clark*, the parties had a mutual agreement whereby each party was to name the other as additional insureds under their respective policies. This case does not involve such mutuality of obligation. Similarly, in *Reb-*

---

**2.** There is no contention that plaintiff did not fulfill its terms of the contract.

**3.** The provision at issue stated:

This policy includes as an additional insured, any person or organization when required to be so named but only as respects operations of the named insured.

*stock,* the insurer, not the owner of the vessel or the plaintiff's employer, asserted that the charterer was not an additional insured. Plaintiff contends that both cases are fact specific and should not be applied to this litigation.

The court does not view these cases so narrowly. Nothing in those opinions suggest that decisions were based on either mutuality of obligation or the particular party asserting that plaintiff is not an additional insured.

As in *Clark* and *Rebstock,* the omnibus clause inserted in defendant's insurance contract provided for additional assureds if "required in the ordinary course of their business." If plaintiff were to prevail on all other issues, plaintiff would be included automatically as an additional assured under defendant's insurance contract. Thus, no breach of contract occurred, and plaintiff's remedies lie with defendant's insurance carrier.

### 2. Escape Clause

For plaintiff to prove damages, plaintiff must be able to show that defendant's failure to name plaintiff as an additional assured resulted in some harm to plaintiff. The insurance policy under which defendant would have named plaintiff as an additional assured states:

> Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the Assurer, under this policy, there shall be no contribution by the Assurer on the basis of double insurance or otherwise.

■ Clauses in insurance policies must be given effect where possible. *Viger v. Geophysical Servs., Inc.,* 338 F.Supp. 808, 812 (W.D.La.1972), *aff'd* 476 F.2d 1288 (5th Cir.1973). An escape clause relieves the insurance company of any liability if there exists other insurance covering the claim at issue. *Efferson v. Kaiser Aluminum & Chem. Corp.,* 816 F.Supp. 1103, 1120 (E.D.La.1993).

■ Defendant's legal arguments concerning this issue may be correct.[4] There are fact issues, however, which the court is unable to determine: (1) whether plaintiff possessed insurance, which otherwise protected it against Mouton's claim; and (2) whether plaintiff accepted defendant's policy of insurance without objection.

While the parties informally notified the court that they would agree to a plenary trial based on the existing record, and perhaps additional stipulated facts, such stipulation has not been forthcoming. The court is unable to resolve these issues as a matter of summary judgment, and is unable to do so plenarily.

### IV. Conclusion

Assuming defendant was required to name plaintiff as an additional assured prior to the date of Mouton's alleged accident, plaintiff's claim must fail because defendant did not breach the contract.

A separate order will be entered denying plaintiff's motion for summary judgment, and granting defendant's motion for summary judgment.

### ORDER

For reasons given in the accompanying memorandum, it is hereby

**ORDERED** that plaintiff's motion for summary judgment is **DENIED.** It is further

**ORDERED** that defendant's motion for summary judgment is **GRANTED.**

A final judgment will be entered separately.

### FINAL JUDGMENT

This action came on before the Court, and the issues having been duly considered and a decision having been duly rendered, it is

---

**4.** *See Texas Eastern Trans. v. McMoRan Offshore Explor.,* 877 F.2d 1214, 1227 (5th Cir.), *cert. denied sub nom. Marathon Oil Co. v. McMoran Offshore Explor. Co.,* 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 321 (1989) (regarding interpretation of clauses within P & I policy, despite defendant's failure to obtain such insurance).

ORDERED and **ADJUDGED** that plaintiff take nothing, and this lawsuit is **DISMISSED.** It is further

ORDERED and **ADJUDGED** that all motions by either party not previously ruled on are hereby **DENIED.**

Each party shall bear its own costs.