610 So.2d 172 (1992)
RIO ROUGE DEVELOPMENT CORP., et al., Plaintiffs-Appellees,
v.
SECURITY FIRST NATIONAL BANK, et al. (Fidelity & Deposit Co. of MD), Defendants-Appellants.
No. 91-1175.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Rehearing Denied January 21, 1993.
*173 George Harrison, Alexandria, for plaintiff-appellee.
Lauvatis Harrison, in pro per.
Clayton Swank, Covington, for plaintiff-appellee Rio Rouge.
Preis & Crawford, Scott Crawford, Baton Rouge, for defendant-appellant.
John Munsterman, James Downs, Alexandria, Walter Stuart, Houston, for defendant-appellee Bank.
Eugene Matherne, John K. Hill, Lafayette, for defendant-appellee.
David Spence, Alexandria, for defendant-appellee Scott Stevens.
Dermot McGlinchey, New Orleans, for defendant-appellee Harbor Ins.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
This appeal concerns the issue of an insurer's duty to defend. It focuses on the narrow issue of whether the trial court properly applied American Home Assurance Company v. Czarniecki, 230 So.2d 253 (La.1969), and whether summary judgment was properly granted in favor of the insurers. Even more narrowly this appeal is limited to the question of whether National Standard Insurance Company (National) and Northern Insurance Company of New York (Northern) had a duty to defend Security First National Bank (Security) in a defamation action brought by Rio Rouge Development Corporation (Rio Rouge), George W. Harrison, and Lauvatis Harrison. The trial court concluded that National and Northern did not have a duty to defend Security because the plaintiffs failed to allege falsity of the defamatory accusations, and even if pleaded, the defamation action had prescribed.
*174 Fidelity & Deposit Co. of Maryland (Fidelity), the assignee of Security,[1] contends on appeal that the trial court erred in finding: (1) that National and Northern's duty to defend did not extend to prescribed claims; (2) that plaintiffs' petition failed to allege a claim for defamation; and, (3) that it did not have to reach the coverage prong of the Czarniecki test.

FACTS
In its well written reasons for judgment, the learned trial court summarized the applicable facts as follows:
"This ... suit arises out of the failure of Security First National Bank ("Security") to fund the development of the Rio Rouge golf community pursuant to an alleged contract to lend. The defendants, National Standard Insurance Co. ("National") and Northern Insurance Co. of New York ("Northern"), issued commercial general liability policies to Security. The effective dates of the two National policies are January 1, 1986 to January 1, 1987 and January 1, 1987 to January 1, 1988. The effective dates of the Northern policy are February 1, 1988 to February 1, 1989. Both insurers seek Summary Judgments on the grounds that the allegations of the plaintiffs' petition do not require coverage under the policies....
* * * * * *
The final cause of action raised by plaintiffs involves certain derogatory remarks allegedly made by directors and employees of Security about Mr. Harrison and the Rio Rouge development. National argues that the plaintiffs' allegations are insufficient to State a claim of libel, slander, or disparagement; therefore, there is no personal injury coverage under the terms of the National Std. policy."

DUTY TO DEFEND
Fidelity argues that the trial court erred in finding that National and Northern did not have a duty to defend Security. Fidelity relies on two arguments.
Before discussing Fidelity's arguments, we find it appropriate to discuss the common ground shared by the litigants in their brief.
Initially, Fidelity, National, and Northern agree that the reviewing court must look to the Czarniecki case to evaluate Fidelity's claim that National and Northern should not have been dismissed. In Czarniecki the Louisiana Supreme Court stated at 230 So.2d page 259:
"Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. And the insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Benoit v. Fuselier, 195 So.2d 679 (La.App.1967).
Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. Benoit v. Fuselier, ibid."
The litigants also agree that an insurer's duty to defend an insured is broader than the duty to provide coverage and pay losses. They also agree that the insurer's duty to defend is governed by the conjunctive Czarniecki test, i.e., that there be liability to the plaintiff presuming that the allegations of the petition are true, and that there be coverage under the policy.
Northern and National also agree that the legal issue must be determined only by viewing the allegations of the plaintiffs' *175 petition and the wording of the insurance policies.
In its reasons for judgment, the trial court specifically found that plaintiffs' defamation action was not properly alleged for two reasons. First, the trial court concluded that the plaintiffs failed to allege the falsity of the alleged defamatory comments. Second, it stated that as alleged in the petition, the claim for defamation had prescribed.
The applicable sections of plaintiffs' petition state:
"B] Interference with the Sale of Lots and refinancing of the development. William Myhand at the Alexandria Country Club on numerous occasions, made derogatory remarks about George W. Harrison and the Rio Rouge Development to Scotty Stevens and others, whose names are not presently known. In addition and upon information and belief, the said William Myhand, had discussions with a number of persons, the names of which are presently known by the said William Myhand, wherein such persons were requested by Myhand to wait in purchasing Rio Rouge Lots, until the Bank had the Rio Rouge property through foreclosure. 2] Defendant Myhand stated to Petitioner George W. Harrison, in a January meeting, at which Stanley Spiwak was present, that Petitioner `didn't have to tell him about the viability of the project,' he had `received at least 50 calls from people interested in buying lots and advised them to hold off for awhile.' 3] by derogatory remarks, as to Petitioner George Harrison's character made by an Officer of Security First National Bank to Mrs. Rush, in December, 1986.
B][1] Defendant Myhand advised Paul Stevens, Miami, Florida in a telephone conversation in late October or early November, 1986, when he called relative to making an equity investment in Rio Rouge Development Corporation and the placing of certain guarantees upon the Rio Rouge Loan. `... Why don't you just let us go ahead and foreclose on the property, we will then sell it to you ..."
B][2] An Officer of Defendant, Security First National Bank, advised Mr. Greg MacLaughlin of Houston, Texas, when he called seeking information about the purchase and/or financing of the property... `We have the property in foreclosure, why bother dealing with Harrison or Rio Rouge, we will have it back before long and will sell it to you for fifty cents on the dollar, or less.'
B][3] Defendant Kinberger advised Reven Fontenot that he had many inquiries relative to the purchase of the property, which he was keeping on file and hadn't forwarded to Petitioners. A local Realtor advised me that she went to "Security" and contacted Defendant Myhand relative to the possible purchase and/or joint venture of the property by her Client from Dallas, Texas. She was advised that Defendants didn't know how to get in touch with Petitioners. The Realtor was ultimately directed to the site, to contact Petitioner by John Munsterman, Attorney for the Defendants."
The trial court stated that plaintiffs' petition alleged that the derogatory remarks were made by Security or its personnel between November 1986 and January 1987. Since the petition was not filed against Security until April 5, 1988, approximately 15 months post-utterance, the trial court concluded that the cause of action prescribed and thus National and Northern owed no duty to defend. We disagree.
Based on a review of the plaintiffs' petition, particularly the above-referenced allegations, we fail to find that the petition on its face shows that the defamatory cause of action had prescribed. The petition ascribes no date of the conversation between George Harrison and William Myhand. Although the conversation with Mrs. Rush is dated, none of the allegations in paragraph B of the petition are dated. Accordingly, we do not find that plaintiffs' cause of action had prescribed on its face.
After referring to the elements for an action in defamation as delineated in Cangelosi v. Schwegmann Bros., Etc., 390 So.2d 196 (La.1980), the trial court concluded that there was no duty to defend because *176 plaintiffs "failed to allege the falsity of the so-called derogatory remarks."
The National and Northern policies provided that the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as a result of the "publication or utterance of a libel or slander or of other defamatory or disparaging material ..." Furthermore, "the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury, even if any of the allegations of the suit are groundless, false, or fraudulent...."
In determining an insurer's duty to defend, the allegations of plaintiffs' petition are interpreted liberally to determine whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. American Home Assurance Company, supra. If the plaintiffs' petition discloses even a possibility of liability under the policy, the insurer is obligated to provide a defense. Smith v. Insurance Co. of State of Pennsylvania, 161 So.2d 903 (La. App. 1st Cir.1964).
Initially, we note that National and Northern suggest that plaintiffs' petition should be scrutinized like a peremptory exception to determine whether sufficient allegations relative to defamation have been stated. This is incorrect. It is firmly established that the standard to be applied in determining an insurer's duty to defend its insured is whether the allegations of plaintiff's petition unambiguously exclude coverage. Czarniecki, supra. As long as a covered cause of action is alleged, a defense is owed. The allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend. Czarniecki, supra.
In the present case, although the allegations of plaintiffs' petition are inartfully drawn and broadly stated, we find that the petition alleges sufficient facts which may constitute a claim for defamation. Security allegedly made derogatory statements to third persons which called into question plaintiffs' financial reputation.
National and Northern argue that the derogatory statements were not detailed and no allegation is made that they were false. We are well aware that in order to establish a case of defamation, these two elements have to be proven. Cangelosi, supra. However, for purposes of our analysis of the insurers' duty to defend, the absence of these elements of the cause of action do not defeat our conclusion that the allegations state, at least rudimentarily, a claim which may be covered by the contract of insurance. Simply stated, in interpreting the allegations liberally, we find they set forth grounds which bring the claim within the scope of the insurer's duty to defend.
In reaching this conclusion, we differentiate our decision in Owens v. Jackson, 550 So.2d 359 (La.App. 3rd Cir.1989), relied upon by National and Northern. In Owens, the issue before us was a peremptory exception of no cause of action. As pointed out above, a determination of a duty to defend a case is not restricted to the stringent requirements of a peremptory exception of no cause of action. Moreover, we find that the allegations made in the case sub judice are more detailed than the conclusory statements made in Owens.
In conclusion, we note that it may be that Security may not ultimately be found liable, because the elements of defamation cannot be proven. Nonetheless, as pointed out earlier, the insurer's duty to defend is broader than its duty to pay for losses.
Lastly, in order to find a duty to defend, it is also incumbent upon Fidelity to show that there would be coverage under the insurance policies of National and Northern. Since the trial court did not find that the first prong of the Czariniecki rule was proven, it did not reach this issue.
Fidelity outlined in its brief the various policy provisions and detailed the policy definition of occurrences in order to show that acts of defamation were covered. It is *177 also explained that the policy exclusion for intentional acts did not apply since defamation is particularly covered. Its forthright presentation was not disputed by National and Northern.
We have reviewed the applicable provisions relied upon by Fidelity, and conclude that coverage was provided.
For the foregoing reasons, the judgment of the trial court is reversed and set aside. This case is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs of appeal are assessed to National and Northern.
REVERSED AND REMANDED.
NOTES
[1] Although Fidelity was not substituted as the third-party plaintiff herein, we find that pursuant to LSA-C.C.P. Art. 2086 it was authorized to perfect this appeal because it could have intervened in the trial court. Therefore we shall address the issues raised by Fidelity in this appeal. See Lamp v. Willowdale Nursing Home, Inc., 296 So.2d 442 (La.App. 4th Cir.1974).