683 So.2d 386 (1996)
CITY OF PLAQUEMINE
v.
NORTH AMERICAN CONSTRUCTORS, INC., et al.
Nos. 95 CW 2467, 95 CW 2495.
Court of Appeal of Louisiana, First Circuit.
November 14, 1996.
*387 L. Phillip Canova, Jr., Plaquemine, Mike Fontham, Laurie Halpern, New Orleans, for PlaintiffCity of Plaquemine.
Eric A. Kracht, Randall C. Gregory, Baton Rouge, for DefendantNorth American Constructors, Inc.
Judith R. Atkinson, Thomas E. Balhoff, Baton Rouge, for Third Party Defendants RelatorsAetna Casualty and Surety Co. and Standard Fire Insurance Co.
Robert J. Daigre, Michael V. Clegg, Mary A. Cazes, Baton Rouge, for Third Party Defendant RelatorAudubon Indemnity Co.
Joseph A. Schittone, Jr., Baton Rouge, for Bernard and Thomas Engineers.
Terry Freiberger, New Orleans, for Insurance Company of North America.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
This matter came before us in writ applications by Audubon Indemnity Company, Standard Fire Insurance Company, and Aetna Casualty and Surety Company on the issue of whether the trial court's grant of a partial motion for summary judgment is viable as an appeal. We denied the writ applications, and, thereafter, rendered a decision on the merits of the matter as an appeal. The Louisiana Supreme Court has subsequently granted writs to the relators, and ruled that a summary judgment rendered pursuant to La.C.C.P. art. 966(D), involving an insurance company's duty to defend is not a partial judgment for purposes of appeal. In view of the Supreme Court advising us to exercise our supervisory jurisdiction to determine this matter, we recall the original opinion regarding the appeal and proceed with the following determination on the consolidated writs.
On January 20, 1987, the City of Plaquemine, Louisiana (Plaquemine) and North American Constructors, Inc. (North American) entered into a contract for the construction of improvements to the South Wastewater Treatment Plant (SWTP). North American retained the services of Barnard & Thomas Engineering, Inc. to design the improvements. The project consisted primarily of constructing and pouring two large rectangular tanks, a clarifier tank and a chlorine tank, which shared a common *388 concrete wall. On September 26, 1988, Plaquemine filed a "Notice by Owner of Acceptance of Work." In December, 1991, the clarifier tank was partially drained in order to perform some repairs. The petition states that representatives of the city "observed" the existence of "cracks" in the concrete walls at that time.
Suit was filed by Plaquemine against North American for breach of contract. North American filed a third party demand and/or cross claim against all the insurance companies that had provided general liability coverage to North American from September 1, 1988 through September 1, 1992. These comprised: Standard Fire Insurance Company, primary general liability carrier from September 1, 1988 through September 1, 1989; Aetna Casualty and Surety Company, excess general liability carrier from September 1, 1988 through September 1, 1989; Audubon Indemnity Company, primary and umbrella carrier from September 1, 1989 through September 1, 1990; and Insurance Company of North America (INA), primary carrier from September 1, 1990 through September 1, 1992, during which terms Audubon Indemnity Company provided umbrella coverage.
On August 21, 1995, North American filed a motion for partial summary judgment against Standard Fire Insurance Company, Aetna Casualty and Indemnity Company, and Audubon Indemnity Company, based on the insurers' duty to defend. The district court granted the partial summary judgment on October 16, 1995.[1]
Louisiana Code of Civil Procedure article 966, as recently amended[2], provides that summary judgment is favored. The mover bears the burden of proof to demonstrate that no genuine issue of material fact remains and that the mover is entitled to judgment as a matter of law. In this instance, the issue is whether there is a possibility that each of the insurers owes movant a duty to defend; i.e., whether there is a possibility that the incident occurred during the term of the policy and is within the parameters of coverage.
It is conceded by the parties that the insurer's obligation to defend suits against its insured is broader than its potential liability for damage allegation Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987). The insurer's duty to defend is based upon the particular allegation in the petitioner's pleading, to the extent that the insurer is obligated to provide a defense unless the petition unambiguously excludes coverage. Meloy v. Conoco, Inc., 504 So.2d at 838, citing American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). Furthermore, the allegations of the petition are to be liberally interpreted in ascertaining whether they engender a duty to defend. If they do not unambiguously exclude coverage, then the insurer is required to defend, irrespective of the outcome of the suit. Yount v. Maisano, 627 So.2d 148, 153 (La.1993). This court has observed that, "The absence of detailed times, dates, and places in the petition does not defeat our conclusion that the allegations state, at least rudimentarily, a claim which may be covered by the insurance contract.... The fact that the allegations of the petition could be clarified to unambiguously include coverage also shows the original petition did not unambiguously exclude coverage." Federal Insurance Company v. St. Paul Fire & Marine Insurance Company, 93-1099, p. 7 (La.App. 1st Cir. 6/24/94) 638 So.2d 1132, 1135.
Each of the insurance policies under review herein contained a products/completed operations hazard exclusion clause; however, that exclusion was specifically qualified by conditional language, such that it did not pertain if it was performed on the insured's behalf by a subcontractor. Although the Plaquemine did not specifically refer to a subcontractor in the petition, supportive documentation introduced at the hearing on the *389 motion for summary judgment specifically identified a subcontractor. Thus, the policies did not unambiguously exclude coverage.
Audubon Indemnity Company asserts that a specific provision contained within its policy excludes coverage because the tank had been taken out of use. The particular exclusionary clause states the following:
Damages claimed for loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) "Your Product";
(2) "Your Work"; or
(3) "Impaired Property";
if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
The type of exclusionary clause under review has historically been classified as the "sister ship" exclusion. Its interpretation pivots around the word "withdrawal" and the tangential exposure that the insurer might otherwise incur for similar products that, on the suspicion of also being defective, might be withdrawn from use in order to prevent future damages. In such cases, the exclusionary clause has historically applied to those sister products, which are separate and distinct from the insured's failed work product. The insured's defective product, however, would be covered, irrespective of whether or not it is removed from commerce. Todd Shipyards Corp. v. Turbine Service, Inc., 674 F.2d 401, 419 (5th Cir.1982), cert. denied, 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982).
Although the wording of the exclusion in the Audubon policy varies slightly from the verbiage of the clauses in the leading sister ship cases addressed by the judiciary, the essence of the clause remains the same. The insurance coverage inheres defective work products of the insured. To interpret it to signify that removal from use, for any type of repairs, ipso facto results in an application of the subject exclusionary clause defines a logical interpretation of the ambiguous language. As such it would be construed to exclude the very coverage it was initially designed to include, based upon the mere act of taking the defective product out of commerce. Furthermore, given the historical ambiguity surrounding the type of exclusionary clause at hand, which has resulted in myriad inconsistent judicial interpretations, the clause must be resolved in favor of coverage. Superior Steel, Inc. v. Bituminous Casualty Corporation, 415 So.2d 354, 358 (La. App. 1st Cir.1982). Accordingly, the exclusionary clause does not encompass the insured's damaged tank.
Additionally, Plaquemine alleged that representatives of the city "observed major cracks in December, 1991." However, the factual issue of when the cracks were first noticed (or should have been noticed) or manifested, remained ambiguous. The "occurrence" of the cracks during the policy periods is, therefore, an issue not resolved by the allegations of the petition. Given the broad applicability of a duty to defend, coverage may apply. The ambiguity of factual issues to be proven at trial affecting the time of the "occurrence" of the cracks and the applicability of the products/completed operations hazard exclusionary clauses is sufficient to invoke each of the respective insurers' broad duty to defend. All costs are assessed against the relator.
WRITS DENIED.
NOTES
[1] The parties in this appeal have filed various motions regarding expansion of the record before this court to reflect subsequent action at the trial court level. The supplemental record was not taken into consideration by this court in reaching a decision on the issue of the partial summary judgment.
[2] By Acts 1996, First Extraordinary Session, No. 9, effective May 1, 1996.