**LAMAR ADVERTISING COMPANY**

v.

**CONTINENTAL CASUALTY COMPANY**

**No. CIV.A. 03–437–A.**

United States District Court,
M.D. Louisiana.

Oct. 23, 2003.

---

Mark Daniel Mese, Esq., Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., Baton Rouge, LA, for Plaintiffs.

Charles J. Duhe, Jr., Esq., Taylor, Wellons, Politz & Duhe, APLC, Baton Rouge, LA, for Defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on cross motions for summary judgment. Plaintiff, Lamar Advertising Company ("Lamar"), has filed a motion for partial summary judgment (doc. 4), and defendant, Continental Casualty Company ("Continental"), has filed a motion for summary judgment (doc. 17). Both motions are opposed (docs. 13, 27, and 28). There is no need for oral argument. Jurisdiction is based on 28 U.S.C. § 1332.

In its motion, Lamar alleges that Continental is obligated, pursuant to a commercial general liability insurance policy, to provide Lamar with a defense to a lawsuit filed against it in the United States District Court for the Southern District of California and to reimburse Lamar the reasonable attorney's fees and defense costs it has incurred in the underlying litigation.[1] In its motion, Continental ar-

---

1. The underlying lawsuit has already been settled, and Lamar filed this declaratory judgment action seeking to enforce its rights under the insurance policy.

gues that it has no duty to defend Lamar in the underlying litigation and that it has no duty to indemnify Lamar for any of the sums Lamar is claiming, including not only the attorney's fees and defense costs Lamar incurred but also the sums it paid to settle the case. Accordingly, Continental asserts that Lamar's claims for reimbursement of its defense fees and settlement costs should be dismissed.

## UNCONTESTED FACTS

The following facts material to the motion now before the court are taken from the Statement of Uncontested Material Facts submitted by Lamar (doc. 5): [2]

1. In exchange for a premium paid by Lamar, Continental issued a general liability policy, policy number 189151752, with a policy period of January 1, 1999 to January 1, 2002 ("the policy"), to Lamar.

2. Notice under the policy and copies of a lawsuit entitled *RAL Construction v. Lamar Advertising Company; Triumph Outdoor Holdings, L.L.C.; Transit America Las Vegas, L.L.C.; Chancellor Media Outdoor Corporation; and Lamar Outdoor Corporation,* case number 00–CV–535, United States District Court, Southern District of California, and amendments were provided to Continental through letters dated August 16, 2000 and February 1, 2001.

3. Through letters dated February 26, 2001, February 25, 2003, and May 12, 2003, Continental denied Lamar's claims for defense and indemnification under the policy for claims against Lamar in the RAL lawsuit.

The facts as outlined in the Statement of Uncontested Material Facts submitted by Continental (doc. 18) in support of its mo-

tion do not provide as much detailed information, such as the specific dates on which notice was sent, as those submitted by Lamar. In all other respects, the uncontested facts as submitted by both parties are the same. The court notes that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." LR 56.2.

## CONTESTED FACTS

The following is taken from the Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried submitted by Lamar in opposition to Continental's motion for summary judgment:

1. Allegations in the complaint, as amended, by RAL in *RAL Construction v. Lamar Advertising Company; Triumph Outdoor Holdings, L.L.C.; Transit America Las Vegas, L.L.C.; Chancellor Media Outdoor Corporation; and Lamar Outdoor Corporation,* case number 00–CV–535, United States District Court, Southern District of California, supported by deposition testimony taken in the underlying litigation, all of which raise issues of material fact with regard to Continental Casualty Company's duty to indemnify Lamar Advertising Company for all costs and expenses paid in settlement of the underlying litigation.

## LAW AND DISCUSSION

Under Louisiana law, the insurer's duty to defend the insured is generally broader than the duty to indemnify. The duty to defend is determined by examining the allegations of the injured plaintiff's

---

**2.** This matter is essentially predicated upon the allegations of the complaint and amended complaints filed by RAL against Lamar.

Those pleadings are filed in this record and both parties make frequent reference to them—as does the court in this ruling.

complaint, and the insurer is obligated to provide a defense unless the complaint unambiguously excludes coverage. Assuming all the allegations of the complaint to be true, the insurer is required to defend the insured, regardless of the outcome of the lawsuit, if there would be both (1) coverage under the policy and (2) liability to the insured. *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir.2001) (citing *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993)). The allegations of the complaint must be liberally interpreted, and any ambiguous provisions in the insurance policy must be strictly construed against the insurer in favor of coverage to the insured. *Hardy*, 236 F.3d at 290; *Louisiana Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La.1994).

Turning to the case now before this court, RAL Construction ("RAL") has filed three complaints against Lamar in the underlying litigation. In the original complaint and the first amended complaint, RAL only asserts a claim for breach of contract. In the second amended complaint, RAL asserts multiple "claims for relief," including breach of contract, interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage. According to the various complaints filed by RAL, the claims asserted against Lamar are based on a contract entitled Transit Shelter Maintenance and Construction Agreement, dated April 22, 1998, entered into between RAL and Lamar's alleged predecessors in interest. RAL alleged that pursuant to the terms of the agreement, Lamar is obligated to utilize RAL's services on an exclusive basis for the maintenance of all existing bus shelters and for the construction and maintenance of all new bus shelters to be installed under any new municipal contracts entered into by Lamar during the term of the agreement.

The term of the agreement is ten years. The agreement permits Lamar to terminate RAL's services with respect to any municipal contract only if there is a bona fide dispute over the determination of costs associated with that municipal contract.

RAL asserts that Lamar breached the contract by terminating RAL's services with respect to existing municipal contracts where there was not a bona fide dispute over costs and by entering into new municipal contracts without utilizing RAL's services. RAL's other claims are asserted alternatively, "[i]n the event it is ever finally adjudicated or determined that Lamar Advertising is not a successor in interest under the Agreement and has not assumed all obligations owing RAL under the Agreement." With respect to the interference with contractual relations claim against Lamar, RAL alleges that Lamar knew about the existence of the contractual relationship between RAL and Triumph Outdoor Holdings, L.L.C. and Transit America Las Vegas, L.L.C. (the original parties to the contract) and interfered with that relationship by wrongfully and intentionally advising, counseling, persuading, and inducing Triumph and Transit to terminate the relationship. RAL further alleges that Lamar improperly solicited and hired RAL's employees, thereby threatening RAL's ability to provide superior construction and maintenance services. According to RAL's complaint, Lamar's actions in interfering with the contractual relationship caused RAL to suffer injury to its business and losses in an amount to be determined at trial.

With respect to RAL's claim for intentional interference with prospective economic advantage, RAL essentially copies the allegations it had asserted with respect to its interference with contractual relations claim. Although RAL has given it a

different name, this claim is in fact no different than the interference with contractual relations claim. RAL's negligent interference with prospective economic advantage claim alleges that Lamar was aware or should have been aware, based on its special relationship with RAL, that if it did not act with due care its actions would interfere with RAL's economic relationship with Triumph and Transit and cause RAL to lose the probable future economic benefit of that relationship. The complaint then goes on to allege that Lamar nevertheless negligently proceeded to cause the termination of RAL's relationship with Triumph and Transit and to improperly solicit and hire RAL's employees.

Because this is a diversity case this court is *Erie* bound to apply the law of Louisiana. Under Louisiana's Civil Code, insurance contracts, like other contracts (obligations), are subject to the general rules of contract interpretation as set forth in the Louisiana Civil Code. See LSA–C.C. art.1915; *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (2002). Article 2045, declares that "interpretation of a contract is the determination of the common intent of the parties," while article 2046 instructs that, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Finally, Article 2047 enjoins the courts to give the words of a contract "their generally prevailing meaning."

Lamar argues that, accepting the allegations of RAL's second amended complaint as true, Continental had a duty to defend it because there would be coverage under both "Coverage A" and "Coverage B" of the insurance policy issued by Continental to Lamar. Under the policy, "Coverage A," the company agrees "to pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." "Property damage" is given two definitions under the policy: (1) physical injury to tangible property, including all resulting loss of use of that property, and (2) loss of use of tangible property that is not physically injured.

It is undisputed that in the underlying litigation, there is no allegation of physical injury to property owned by RAL, so the first definition of "property damage" is inapplicable. RAL only alleges the loss of future economic benefits. Tangible property is not defined in the insurance policy, but it has been consistently equated with corporeal property by the Louisiana Supreme Court. *City of New Orleans v. Baumer Foods, Inc.*, 532 So.2d 1381 (La. 1988). Corporeal things have a body and can be touched or felt, and incorporeal, or intangible, things "have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and intellectual property." LSA–C.C. art. 461. Accordingly, the words of the contract—tangible property—will be given their generally accepted meaning—corporeal property. As Article 461 provides, obligations (contracts to common law lawyers) are incorporeal and that concept will guide us in interpretation of this contract.

We continue to focus upon the language of the policy—"the words of [the] contract"—to ascertain the intent of the parties as to coverage. Clearly, this contract covers only damages caused by "loss of use of tangible [corporeal] property that is not physically injured." It is immediately apparent that Lamar must point to specific, corporeal property of which the plaintiffs in the underlying litigation claimed loss of use. Our attention, therefore, should be upon the tangible property rather than the type of loss claimed. Lamar has failed to

identify any tangible property for which loss of use was claimed by RAL.

■ Lamar claims that the right to future economic benefits that RAL claimed it lost is a tangible right and thus covered by the insurance policy. To this court it appears that Lamar thereby focuses upon the damages, not upon any corporeal property.

Lamar cites a case decided by the Louisiana First Circuit Court of Appeal, *Dietrich v. Travelers Ins. Co.*, 551 So.2d 64 (La.App. 1 Cir.1989). In *Dietrich*, an employee brought suit against her employer, alleging the employer was negligent and had breached the employment contract by failing to enroll her in its health and disability plan. The employer impleaded its comprehensive general liability insurer, alleging coverage under the insurance policy it had issued. The policy defined "property damage" using language similar to the policy currently before the court, including the phrase "loss of use of tangible property which has not been physically injured." The court recognized that tangible property has been equated with corporeal property by the Louisiana Supreme Court, but nevertheless held that the loss suffered by the employee as a result of her employer's failure to enroll her in its group health and disability plan (breach of contract) fell within the definition of "property damage." The court stated, "[a]lthough the *right* to the benefits payable under the health and disability policy may be an intangible right, the actual benefits which would have been payable under the policy had Ms. Dietrich been properly enrolled in and covered by the policy constitute tangible property, i.e. money." *Id.* at 65–66.

Continental cites *Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075 (5th Cir.1992). Both parties have spent considerable effort arguing about the significance of *Selective Ins. Co.* That case simply involved a claim of injury to partnership interests. The complaint in the underlying litigation alleged that the defendants had committed various wrongs resulting in the loss of future income from the operation or sale of partnership property. In discussing the allegations of lost income and rent which would have been due to the partnership, the court noted that a partnership interest is undoubtedly incorporeal (not tangible) property and that the claims of lost rent and income are incorporeals and therefore intangibles. Regarding the *Dietrich* case, relied upon here by Lamar, the court noted, "We will not expand *Dietrich's* holding on 'actual benefits' to every anticipated hope of future income." *Id.* at 1080.

Following the lead of the Fifth Circuit, this court will not expand *Dietrich's* holding beyond the policy at issue in that case.

There can be no doubt that contractual relationships are incorporeals, not "tangible property" under article 461. What Lamar is saying is that RAL claims that Lamar interfered with RAL's contractual relationships with others which caused damage to RAL in the form of loss of anticipated future economic benefits flowing from those incorporeal contractual rights. Focusing upon the words of the contract, "tangible property," nowhere does Lamar identify any tangible (corporeal) property.

Lamar has cited other cases in support of its argument, such as *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081 (La.1983), *Cute' Togs of New Orleans, Inc. v. Louisiana Health Service & Indem. Co.*, 376 So.2d 999 (La.App. 1 Cir.1979), and *Nelson v. Want Ads of Shreveport, Inc.*, 720 So.2d 1280 (La.App. 2 Cir.1998), but they are inapplicable. *Cute' Togs* was reversed by the Louisiana Supreme Court, 386 So.2d 87 (La.1980). *Borden* and *Nelson*, on the other hand, both involve actual physical injury or loss of use of tangible

property. In *Borden*, the court awarded damages for loss of production suffered as a consequence of the loss of use of a methanol manufacturer's compressor, which had been physically damaged. *Borden*, 454 So.2d at 1090. *Nelson* involved allegations of misappropriation or conversion of advertising coupons. *Nelson*, 720 So.2d at 1283.

In the instant lawsuit, RAL only has alleged loss of the future economic benefits to which it would have been entitled under the Transit Shelter Maintenance and Construction Agreement, its incorporeal property, that was damaged by Lamar.

Assuming that the *damages* (money) claimed by RAL as a result of interference with its incorporeal property are tangible, the policy before the court does not cover *all damages*. Under the "clear and explicit" words of the policy the company agrees to pay *only* those damages that are caused by loss of use of tangible property. The court cannot put its finger upon any tangible property the loss of use of which allegedly caused damage to RAL.

This court has no hesitation in concluding that RAL's claims are solely for damage to intangible (incorporeal) property, and thus, there is no loss of use of tangible property that caused the damages claimed. Therefore, taking all the allegations of RAL's complaint as true, RAL has suffered no "property damage" as defined by the "clear and explicit" words (art.2047) of the Continental insurance policy, and there is no coverage under "Coverage A."

■ Lamar also asserts that Continental is obligated to provide it with a defense to the RAL litigation because the RAL litigation is covered under "Coverage B" of the insurance policy. "Coverage B" covers "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies." Lamar argues that RAL has asserted a claim alleging personal injury, which is defined under the policy as follows:

> "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
>
> \*    \*    \*    \*    \*    \*
>
> d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or...

The allegation of personal injury on which Lamar relies is RAL's assertion in its complaint that Lamar "wrongfully and intentionally advised, counseled, persuaded and otherwise induced Triumph and/or Transit to terminate the Agreement and their contractual relationship with RAL." The complaint further alleges that Lamar negligently caused the termination of RAL's relationship with Triumph and Transit and improperly solicited and hired RAL's employees. Lamar argues that RAL is clearly alleging that Lamar, in its attempt to interfere with RAL's contractual relationship and solicit its employees, provided oral or written material that was not favorable, and thus was disparaging, as to RAL.

However, accepting as true the allegations in RAL's complaint, RAL has not asserted a claim for "personal injury" because it has not alleged any specific oral or written publication by Lamar. Although the allegations of the complaint are to be liberally interpreted, Lamar is asking the court to do more than liberally interpret the complaint. The court will not read a defamation claim into RAL's complaint. See *Hardy v. Hartford Ins. Co.*, 236 F.3d at 292. Two Louisiana cases, *Federal Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 638 So.2d 1132 (La.App. 1 Cir.1994), and *Rio Rouge Dev. Corp. v. Security First Nat'l Bank*, 610 So.2d 172 (La.App. 3 Cir. 1992), found the plaintiffs' allegations, al-

though inartfully drawn and broadly stated, sufficient to trigger the insurer's duty to defend a claim of defamation. However, the plaintiffs' petitions in those cases contained specific allegations of "false statements and innuendos [made] maliciously and with total disregard for the truth or falsity of said statements" and "derogatory remarks." *Hardy v. Hartford Ins. Co.*, 236 F.3d at 292 n. 5. In the instant lawsuit, there are simply no such factual allegations in the complaint, and therefore, "Coverage B" of the insurance policy is not triggered.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party may discharge his burden of proof by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The entry of summary judgment is mandated, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issues of material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

Neither "Coverage A" nor "Coverage B" of the Continental insurance policy provides coverage for the underlying litigation, and accordingly, Continental is entitled to summary judgment as a matter of law. Continental has no duty to defend Lamar and no duty to indemnify it for the expenses it has incurred in connection with the RAL litigation.

## CONCLUSION

For the foregoing reasons, the motion for partial summary judgment (doc. 4) filed by plaintiff, Lamar Advertising Company, is hereby **DENIED**. The motion for summary judgment (doc. 17) filed by defendant, Continental Casualty Company is hereby **GRANTED** and this action shall be dismissed.