| MOAN BERNARD ARMSTRONG, Chief Judge.
This is a coverage dispute between insurers arising out of an automobile accident personal injury suit. Chester T. Al-paugh, III, a Boy Scouts of America (Boy Scouts) volunteer, was driving his son, George Reade Alpaugh (Reade), and two others home to New Orleans from a scouts camping trip in Mississippi when he was involved in a very serious automobile accident. At the time of the accident, Mr. Alpaugh had liability coverage on his car through The Continental Insurance Company (Continental), Policy # US 202844307. He was provided insurance coverage as well through a policy of insurance issued to the Boy Scouts through Liberty Mutual Insurance Company (Liberty Mutual), Policy # TB1-191-409751-128.
As a result of the accident, Katherine T. Alpaugh, Reade’s mother and tutrix, filed suit against the two insurers in 1998. Continental and Liberty Mutual filed cross-motions for summary judgment to declare the order of insurance coverages as between their policies. On September 13, 2000, the trial court denied Continental’s motion and granted Liberty Mutual’s motion, holding that the [^Continental policy provides the first layer of insurance coverage and the Liberty Mutual policy provides a second layer of coverage that is excess to the full limits of the Continental policy.
The parties settled the case, with the exception of Continental’s claim that coverage under its policy is excluded by reason of the policy’s “family member” exclusion. That issue was tried to a jury and resolved in favor of coverage. The trial court by judgment of August 7, 2002, denied Continental’s claim and also designated as final and appealable the court’s previous judgment of September 13, 2000.
Continental appeals from that judgment. Because our de novo review convinces us *625 that the Insurance Code and Louisiana jurisprudence require a finding that the Continental automobile policy is primary to the Liberty Mutual general liability excess policy, we affirm the judgment of the trial court.
STATEMENT OF FACTS
The insurers have each filed certified copies of their applicable policies, and there is no dispute as to their correctness.
The Continental policy has a single number, U.S. 202844307. The term “policy” appears solely in the singular throughout the document. On its declarations page, the policy provides in pertinent part:
COVERAGE OPTIONAL EXCESS LIABILITY
Following that disclosure, the declarations page lists:
| «MOTOR VEHICLE(S) 1 HOME LOCATION(S) 1 BOAT(S) 1
LIMIT $1,500,000.
The declarations page does not specify a limit for each of the covered items. Under the heading “PERSONAL LIABILITY”, with respect to automobile coverage, the declarations page lists:
MOTOR VEHICLE LIABILITY LIMIT
PERSONAL LIABILITY VEHICLE(S) 1 BODILY INJURY EACH PERSON $250,000
EACH ACCIDENT $500,000
PROPERTY DAMAGE EACH ACCIDENT $100,000
MEDICAL EXPENSE VEHICLE(S) 1 $ 5,000
MOTOR VEHICLE OPTIONAL COVERAGES LIMIT
250 COMPREHENSIVE COVERAGE VEHICLE(S) 1 COMPREHENSIVE DEDUCTIBLE
30 PER DAY EXTENDED TRANSPORTATION COVERAGE RENTAL REIMBURSEMENT
900 MAXIMUM VEHICLE(S) 1 0/J
100 PER DAY AUTOMOBILE TRIP INTERRUPTION COVERAGE
500 MAXIMUM VEHICLE(S) 1 'C/J
50 TOWING L/J
500 VEHICLES(S) 1 COLLISION DEDUCTIBLE
On the page summarizing premiums for motor vehicles, the total premium is divided as follows: Liability — $1,304; Excess liability — $138; Medical Expense — $50; Comprehensive — $350; and Collision— $326, for a total premium of $2,168.
However, on the Personal Automobile Application, by which Mr. Alpaugh applied for his insurance, below the coverages, limits of liability and premium information is a section entitled “Additional Coverages [illegible word] (Include limit, deductible, premium)”, the following is' printed:
|/‘$1,500,000 xs liability insurance.” Below that is typed in capital letters, “IS ALSO *626 AFFORDED ON POLICY.” There is no separate premium listed here for the “$1,500,000 xs liability insurance,” although limit, deductible and premium seem to be required by the form.
The policy provides an eleven-page endorsement entitled, ‘Tour Optional Coverages OPTIONAL EXCESS LIABILITY COVERAGE ENDORSEMENT — LOUISIANA. The endorsement begins, “In consideration of an additional premium, we will provide the coverage described by the provisions of this endorsement.” The endorsement requires the insured to maintain underlying insurance (minimum retained limit) for bodily injury in the amount of $250,000 per person and $500,000 per accident, and for property damage in the amount of $100,000 per accident. The endorsement provides for a $1,000 deductible in lieu of the minimum retained limit against claims covered by the endorsement but not covered by underlying insurance under certain conditions.
The endorsement provides in pertinent part the following with respect to other insurance:
Only in regard to the coverage provided by this endorsement, the Other Insurance provision of the policy’s “GENERAL PROVISIONS” is deleted and replaced by the following:
Where there is other applicable insurance, we will provide coverage as follows:
* * *
b. During the first and subsequent years of this policy, when an amount of “Optional Excess Liability” is shown effective in the Coverage Summary, the coverage provided by this endorsement is excess over any other valid and collectible insurance except:
| B(l) When other insurance is written specifically as excess coverage over the minimum retained limit, we will pay only our share of the loss. Our share is the proportion that our limit of “Optional Excess Liability” bears to the total of all applicable limits.
(2) When other insurance is written specifically as excess coverage over the amount shown in the Coverage Summary for “Optional Excess Liability,” we will pay amounts due above:
(a) the minimum retained limit;
(b) the Deductible; or
(c) the $50,000 Excess Loss Assessment threshold;
up to our “Optional Excess Liability” limit.
Liberty Mutual’s policy, issued to the Boy Scouts, insures, inter alia, Boy Scout volunteer workers participating in an official Scouting activity and in the scope of their duties as such, and the loaners or owners of non-owned automobiles while being used in the scout activities of the Boy Scouts or any Unit.
Liberty Mutual agrees:
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
(A) Personal injury ...
(1) to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, ...
The Liberty Mutual policy notes with respect to other insurance:
Other Insurance
This policy shall be excess of and shall not contribute or prorate with insurance, ... provided to the in *627 sureds as defined in “person or entities insured” (b), (c), (d), (e), (f) under any insurance policy ... available to such insured ... in the absence of such other insurance ... this policy shall apply as primary. Amounts payable on behalf of the Named Insured or an insured under such other insurance, ... shall reduce the limits of liability of this policy. [Emphasis added.]
| ^Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/2000), 755 So.2d 226, 230.
Continental contends that the trial court erred in finding that Continental’s insurance policy consists of only one primary policy, thus requiring Continental to provide primary coverage limits to the extent of $1,750,000 for injuries or damages to Reade before any coverage is to be provided by Liberty Mutual pursuant to its policy of insurance issued to the Boy Scouts.
Under the facts of this case, we do not reach the question of whether the Continental policy and excess endorsement by their terms constitute a true primary policy and excess policy, as Continental suggests.[1] The fact that the Continental policy and endorsement provide insurance specifically for the vehicle that was involved in the accident, while the Liberty Mutual excess policy insures Mr. Alpaugh in his personal capacity as a Boy Scouts volunteer is dispositive of the issue between these insurers.
The Continental policy describes Mr. Al-paugh’s Acura, the automobile involved in the accident, as a specifically insured vehicle. This description is uncontroverted evidence that the Continental policy and its endorsement provide | coverage to that particular automobile. Continental listed and covered Mr. Alpaugh’s Acura.
Under consistent Louisiana jurisprudence, the entire Continental policy provides primary insurance in this case. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts found in the Louisiana Civil Code. Such interpretation ultimately is the determination of the common intent of the parties, giving the words used in the contract their generally prevailing meaning, and when those words are clear and explicit and lead to no absurd consequence, no further interpretation may be made. LSA-C.C. arts.2045-2047; Lewis v. Hamilton, 94-2204 (La.4/10/95), 652 So.2d 1327.
The Louisiana Motor Vehicle Safety Responsibility Law, found in LSA-R.S. 32:851-1043, provides a mandatory, comprehensive scheme designed to protect the public from damage caused by motor vehicles. This statutory scheme is intended to attach financial protection to the vehicle rather than to the operator, and is not designed to protect the owner against liability, but to provide compensation for persons injured by insured automobiles. Marcus v. Hanover Ins. Co., Inc., 98-2040, p. 3 (La.6/4/99), 740 So.2d 603, 606. Under that scheme, Continental’s policy, including its endorsements, attaches to Mr. Alpaugh’s Acura. The premium was calculated, invoiced and collected based on that automobile.
| sThis type of policy, providing coverage to a specifically identified automo *628 bile, is primary insurance, and other policies that do not specifically reference the Acura do not afford primary coverage. See, Dean v. State Farm, Mut. Auto. Ins. Co., 518 So.2d 1115 (La.App. 4 Cir.1987).[2]
Similarly, where the contest is between owned automobile coverage (cf. Continental’s policy) and non-owned automobile coverage (cf. Liberty Mutual’s policy), the First Circuit Court of Appeal held that insurance provided for non-owned vehicles is ancillary to that provided for the owned vehicle, and the insurer OF THE VEHICLE is the primary insurer, and the insurer of the non-owned vehicle is a true excess insurer. Penton v. Hotho, 601 So.2d 762, 765, fn. 4 (La.App. 1st Cir.1992).
The Liberty Mutual policy protects Boy Scout volunteers like Mr. Alpaugh who might have inadequate insurance to cover losses sustained in the course and scope of their volunteer activities. It does not specifically insure Mr. Alpaugh’s Acura. As noted above, the policy provides that it is to be considered excess to “any insurance available” to Mr. Alpaugh. This provision is not limited to Mr. Alpaugh’s minimum retained limit or his underlying coverage of $250,000/$500,000. Liberty Mutual’s liability is in the nature of the non-owned auto insurance in the Penton and Lewis cases. The primary insurance is the policy, including endorsements, issued by Continental specifically covering the Acura that was involved in this accident.
|9For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. There are facts that support and facts that do not support the conclusion that the endorsement is true excess insurance. While the endorsement requires underlying insurance and the policy notes a separate premium tor the endorsement, Mr. Alpaugh’s application does not show that he was charged an additional premium for the "excess” endorsement.

. The same result obtains in the Uninsured/Underinsured Motorist context, where the Insurance Code was held to deem automobile insurance primary regardless of the policy’s terms where the coverage is on the vehicle occupied by the injured party. Comberrel v. Basford, 550 So.2d 1356 (1989).