DREW, J.
bOn November 4, 2008, Wayne String-fellow, through retained counsel, filed a proper request for a medical review panel, contending that he was the victim of medical malpractice committed by Dr. Lawrence Johnson and Willis-Knighton Medical Center (“WKMC”).
On September 14, 2011, almost three years later, the panel rendered its conclusion that the applicable standard of care had not been violated. Shortly thereafter, plaintiffs lawyer terminated his-representation of the plaintiff.
On December 21, 2011, Stringfellow filed a pro se medical malpractice suit against these defendants, requesting service on each in the prayer of the petition, asking to proceed as a pauper, and adding service instructions.
On January 3, 2012, he was denied pauper status, without reasons.[1]
On May 23, 2012, advance court costs were paid.
On June 1, 2012, putative service was made on Dr. Johnson through an employee at his office. Dr. Johnson responded by filing a declinatory exception of insufficiency of service, contending that the service was improper, and even if service was sufficient, it was untimely.
On June 13, 2012, WKMC was served.
On June 25, 2012, attorney Young formally enrolled for plaintiff.
On June 27, 2012, WKMC answered, alleging that it had not been served within 90 days of filing of the petition as required by La. C.C.P. art. 1201(C). WKMC did not seek a dismissal or other relief at that time.
li>On July 2, 2012, WKMC filed a motion for involuntary dismissal predicated upon plaintiffs failure to make a timely request for service.
On July 26, 2012, the trial court rendered judgment in favor of each defendant, dismissing the suit without prejudice. Plaintiff now appeals.
DISCUSSION

Pauper Status

Apparently pauper status was denied because of the lack of a third party *464 affidavit of indigency. Stringfellow’s own affidavit revealed that he owned no movable or immovable property, had $4 in a checking account, received $1,113 per month, and had monthly expenses of $1,380. He clearly would have been able to establish his pauper status, had he provided the missing affidavit.
Plaintiff cites Tenney v. Burlington Northern & Santa Fe Ry. Co., 2003-1260 (La.1/21/04), 863 So.2d 626, where the supreme court held that when a pro se litigant’s request to proceed in forma pau-peris is denied, the court should:
• provide a reasonable period in which to cure the defect in the pauper application or to pay advance court fees; and
• state the consequences if the litigant failed to respond timely.[2]
Defendants distinguish Tenney from the present facts, as that case dealt with La. R.S. 13:850 and the facsimile (“fax”) filing of a lawsuit. That court held that the requirement to pay filing and transmission fees within five days of the fax filing can be satisfied by filing a request for pauper lsstatus within five days, and that if the request was denied, then the trial court should issue an order granting a reasonable delay to pay the fax filing fee. Defendants argue that, in contrast, Stringfellow had 90 days to pay the filing fee, which should have been more than enough time in which to cure any defects.
Plaintiff also cites Roy v. Gulf States Utilities Co., 307 So.2d 758 (La.App. 3d Cir.1975), where the Third Circuit concluded that a motion to proceed in forma pauperis that was missing a third party affidavit[3] could be confirmed and/or ratified retroactively by the later filing of the missing affidavit.
Defendants argue that Roy merely held that when a clerk of court issued an order allowing a plaintiff to proceed in forma pauperis, even though required affidavits were not attached to the petition, the order was a relative nullity that could be confirmed later by filing the requisite affidavits at the time the court ruled on pauper status. Defendants argue that String-fellow had not supplied an affidavit by the time the court denied the request for pauper status.[4]
Stringfellow responds that he should have been informed of:
• the fact of and the reason for the denial;
• the consequences of his not taking timely corrective actions; and
• a reasonable time frame to correct the error or advance costs.[5]
14Fairness militates in favor of liberally construing code provisions authorizing pauper status in favor of affording an indigent litigant his day in court.[6] Nothing here shows that Stringfellow abused this privilege.

*465
Service Issues

La. C.C.P. art. 1201(C) requires that service shall be requested on all named defendants within 90 days of commencement of the action. Stringfellow complied with art. 1201(C) by requesting service on both defendants in his prayer and by providing service instructions.[7] He argues that even if the Johnson service and return were defective, these mistakes would be imputable to the sheriff, not the plaintiff.
WKMC relies on Ayers v. Goodwill Industries, 2003-1576 (La.App. 4th Cir.3/10/04), 870 So.2d 348, in support of its motion, but that case is distinguishable. Ayers, who was at all times represented by counsel, filed a lawsuit on October 4, 1999, along with an application for in forma pauperis status, which was denied four days later. The petition contained service information, but advanced no costs, so no service was effected until February of 2003, following a service request made only three days earlier. | ¡Ayers contended that she was unaware of the denial of pauper status, but her petition was nonetheless dismissed without prejudice. The appellate court affirmed, holding that no good cause existed for the failure to pay costs and request service for a period of over three years after the denial of pauper status, during which lengthy time frame neither Ayers nor her attorney made any effort to inquire as to her pauper status.[8]
Defendants also urge that we affirm the dismissal based on the holdings in Tran-ehant v. State, 2008-0978 (La.1/21/09), 5 So.3d 832.[9]' This reliance is misplaced, in that there are three stark differences between Tranehant and this case:
1. At all times, Tranehant was represented by counsel;
2. Tranchant’s attorney initially requested that service be withheld, and
3. The core issue in Tranehant was whether the 90-day time limit could be satisfied by mailing the request, or whether there actually had to be communication with the clerk before the 90-day deadline.
La. C.C.P. art. 1672(C) states that a judgment dismissing an action with prejudice shall be rendered for a defendant for whom service has not been requested within the time period prescribed by art. 1201(C), unless good cause is shown why service was not requested. Stringfellow made a timely request on day one. String-fellow’s attorney paid the advance costs |fiand requested service five months after Stringfellow filed his initial pro se petition. Under these unique facts, we find good cause[10] for the delay.[11]
*466 This is admittedly a troubling area in our jurisprudence, and we see no clearly outlined path to follow.[12]
OUR REASONING
We must reverse the trial court’s dismissal, though we certainly understand that rules are rules and defendants have the right to be promptly advised of adverse lawsuits. These unusual facts require, however, that we must exercise some equity in the furtherance of justice. This plaintiff deserves his day in court.
The trial court should have notified the plaintiff:
• that it had denied the request for pauper status;
• the reasons for the denial;
• the ramifications of ignoring this denial; and advising of
• a time frame during which he could either resubmit his application for pauper status, or post advance costs.
17Most importantly, the trial court abused its great discretion, under these peculiar facts, by dismissing the lawsuit.
We reverse the judgment of dismissal, and order that the trial court reconsider the application for pauper status, if a proper application is made.
DECREE
At the cost of defendants, the judgment of dismissal is REVERSED. The trial court is ordered to reconsider an application for pauper status, should a request in proper form be filed.

. This record does not indicate when or if the plaintiff received notice of the denial.

. It would be reasonable to assume, and this record clearly preponderates, based on the plaintiff hiring a lawyer and advancing required court costs, that had he received the order of denial in early January 2012, he would have attempted to timely comply.

. As is apparently the situation here.

. The request to proceed as a pauper was denied two weeks after the filing of the petition. This time frame included the Christmas holidays.

. WKMC urges that the issue is moot, since plaintiff never took a writ, and since costs have now been paid. See Johnson v. St. Francis Medical Center, Inc., 521 So.2d 803 (La. App. 2d Cir.1988), which held that "the issue of whether the trial court erred in denying the motion to proceed in forma pauperis is properly before the court on the appeal from the final judgment dismissing plaintiff’s suit.”

. See Benjamin v. National Super Markets, Inc., 351 So.2d 138 (La. 1977).

.After his signature and contact information at the end of his original petition, String-fellow makes this service request as to Dr. Johnson:
PLEASE SERVE DEFENDANTS: DR. LAWRENCE WEBSTER JOHNSON c/o Gastrointestinal Specialists, AMC, 3217 Mabel Street, Shreveport, Louisiana 71103.
This is an adequate service request by an unrepresented 44-year-old unemployed father of two children who is married to a housewife and in desperate financial straits, with four bucks in the bank. To maintain that this is not an appropriate request for service is hair-splitting and Byzantine beyond words.

. Stringfellow filed suit with no lawyer. He paid for service five months after filing suit and 4½ months after being denied leave to proceed as a pauper. This is a long way from the 40-month delay occasioned by Ayers, who was a represented plaintiff.

. The Tranehant court held that a request for service is not a proper request, until the clerk of court receives a service request upon which he can act.

. We recognize that the good cause requirement relative to lack of service is strictly construed. See Barnett v. Louisiana State University Medical Center-Shreveport, 2002- *466 2576 (La.2/7/03), 841 So.2d 725, Calegero and Johnson, dissenting. Barnett involved failure to make service until more than 90 days after the plaintiff's attorney was informed that service had been made on the wrong agent for service of process. The Barnett facts are dissimilar to those in this record. Stringfellow was unrepresented and may never have been notified of the court’s denial of pauper status.

. Perhaps it is time for legislation or a court rule, establishing a mandatory protocol for required notification to a plaintiff whose request for indigent status is denied.

. See Jenkins v. Larpenter, 2004-0318 (La. App. 1st Cir.3/24/05), 906 So.2d 658, writ denied, 2005-1078 (La.6/17/05), 904 So.2d 711, where our sister court found, in a 2-1 decision (Guidry, dissenting), that an inmate’s suit against the sheriff was properly dismissed on account of a failure to request service for over 10 months after notification of the denial of his request to proceed as a pauper. In contrast, we can't tell when, if, or how String-fellow received notification.